IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>  ) <br>       Plaintiff,    ) <br>  ) <br> vs.   ) <br>  ) <br> **LYLE WOODY BEGAY**,   ) <br>  ) <br>       Defendant.   ) | Cr. No. 14-00747 JB |

UNITED STATES' MOTION TO EXCLUDE EXPERT
TESTIMONY FROM SUPPRESSION HEARING

    The United States moves this Court to exclude the expert testimony of defense witnesses Richard Leo, Ph.D. (Leo), and Eric Lucero (Lucero) who have been identified by defense counsel as potential defense experts, though not formally disclosed to this Court or to the United States pursuant to Fed. R. Crim P. 16(b)(1)(C). The United States requests that as a matter of law this Court preclude Leo and Lucero from testifying at the upcoming suppression hearing.

    As is required by Rule 16(b)(1)(c) "[t]he summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Leo and Lucero have not provided reports, any literature to support their testimony, or any analysis of what they reviewed in order to become familiar with this case. The sum total of what we know about Leo is a recently disclosed transcript and audio-recording of an interview of Defendant in December of 2015. Leo asked Defendant about the three recorded statements Defendant made to the FBI in July 2013. With regard to Lucero, the United States has only just received his CV. No reports or publications or summaries of testimony have been provided.

    Without reports or summary reports from the defense experts, the United States, nor this

Court, has absolutely no basis to evaluate whether Leo or Lucero's opinions and the bases and reasons for those opinions, meets the legal requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). For this reason alone, the Court should exclude both of Defendant's proposed experts from testifying at the upcoming suppression hearing.

## **LAW ON EXPERT TESTIMONY**

Federal Rule of Evidence 702 governs expert witness testimony admissibility. Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court stressed a court's gate-keeper function with respect to the admissibility of expert testimony pursuant to Rule 702. In this gate-keeper role, prior to the admission of expert testimony, the court must assess the reliability of the proposed expert testimony and "ensure that any and all scientific testimony is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. "This gatekeeper function requires the judge to assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge v. Cotter Corp.*, 328 F.2d 1212, 1221 (10th Cir. 2003).

## ARGUMENT

Defendant has enlisted Leo's testimony solely to diminish the damage of his incriminating statements. Upon information and belief, Leo intents to testify that all three of

Defendant's statements were false due to coercion. Because such testimony is irrelevant and improper under Rule 702 and *Daubert*, the Court should exclude Leo from testifying.

First and foremost, without the production of a report or summary of opinion, Defendant has failed to meet Rule 702's requirements. Even if Defendant provides the United States with a summary of anticipated testimony or even a report authored by Leo, it is believed that Leo will be unable to explain a scientific basis for his evaluation and conclusions asserting that Defendant's confession is the result of so-called "false admissions." The lack of a report simply violates the admissibility threshold contained in Rule 702 and it fails to comply with Fed. R. Crim. P. 16(b)(1)(C). Defendant has offered no additional information aside from the audio-recording and transcript of Leo's interview with Defendant.

Leo's testimony must also be excluded because it is not reliable. False confessions experts such as Leo are unable to accurately predict the frequency and causes of false confessions, and cannot say whether a certain technique with a certain type of confessor will result in a predictable rate of false confessions. Leo has been previously excluded in this District. *United States v. Pauline Yazzie*, Case No. 1:11-cr-01876-WJ, Doc. 145 at 4-5 (a copy of Judge Johnson's Memorandum Opinion and Order is attached hereto as Government's Exhibit 1). In *Yazzie*, Judge Johnson was particularly troubled by the fact that, while Leo's testimony would rely on the notion that certain interrogation techniques are "risk factors" for false confessions, the underpinnings of that notion cannot be tested and have no identifiable "known or potential error rate." *Id.* at 4. During a *Daubert* hearing in *Yazzie*, Leo testified under oath that analyzing these "risk factors" in a given confession rather than in a laboratory setting cannot show causation of a false confession. *Id.* Leo also acknowledged that he is unable to say that interrogation using the techniques he identifies as coercive and therefore treats as "risk factors"

was "more likely than not" to produce a false confession. *Id.* Leo instead acknowledged that researchers do not have the kind of data that would allow them to predict the likelihood that a given interrogation technique will lead to a false confession in a real world setting. *See id.* Based on these substantial weaknesses, Judge Johnson concluded Leo's testimony was not reliable. *See id.*

Other courts have excluded Leo, based on the same reasoning. *See People v. Kowalski*, 492 Mich 106, 133, 821 N.W.2d 14, 31 (2012) (affirming exclusion of testimony from Leo regarding false confessions indistinguishable from his proffered testimony in this case because, *inter alia*, it is impossible to test Leo's research or rate of error, and he has "no ability to estimate the frequency of false confessions"); *Vent v. State*, 67 P.3d 661, 669 (Alaska Ct. App. 2003) (affirming district court's determination that Leo's testimony regarding false confessions was inadmissible because, *inter alia*, there was no way to quantify or test Leo's conclusions that certain techniques might lead to false confessions); *State v. Lance Four Star*, No. D-0101-CR-2000000276, op. at 1-2 (1st Jud. D.C. of New Mex., Aug. 23, 2001)(The court explained with regard to Leo, "there are considerable limitations which presently exist for the analysis of interrogation techniques and their bearing upon false confessions." The court stated, "The conclusions of Dr. Leo are arrived at from an analysis of a small number of cases (sixty) which are not randomly selected . . . . Even if one were to concede the methodology of determining whether a confession is false to a high probability, the numbers used are extremely small."). *United States v. Deuman*, 2012 U.S. Dist. LEXIS 137587, at *12-21 (W.D. Mich. Sept. 13, 2012) (excluding Leo's testimony as unreliable); *Kaguyutan v. Rozum*, 2010 U.S. Dist. LEXIS 9919, *23-24 (W.D. Pa. Feb. 5, 2010) (discussing trial court determination that Leo's testimony was inadmissible in review of habeas petition); *Green v. City of Wenatchee*, CS-01-072-RHW, 2003

WL 26089744 (E.D. Wash. Mar. 14, 2003) (Court excluded Leo's testimony based on concerns regarding the limitations on the study of false confessions. The Appellate Court affirmed the finding that Dr. Leo's false confessions theory "fail[ed] to support any reliable conclusions."); *State v. Wooden*, 2008 Ohio 3629, P24 (Ohio Ct. App., Summit County July 23, 2008) ("Dr. Leo's theory has too many unanswered questions and, therefore, fails to support any reliable conclusions.");*Green v. City of Wenatchee*, CS-01-072-RHW, 2003 WL 26089744 (E.D. Wash. Mar. 14, 2003)(Civil suit alleged that the interrogation tactics employed by defendant police officer included intimidation and threats, which forced defendant to give a false confession (related charges were later dropped). Plaintiff sought to have Leo testify regarding the social psychology of police interrogations, the phenomenon of false confessions, and to refute the erroneous common understanding that a person ordinarily does not make untruthful inculpatory statements. District Court held that Leo's proffered testimony did not meet the requirements of Rule 702 for three reasons: (1) Dr. Leo's testimony on the phenomenon of false confessions is not based on reliable research that can be duplicated without invoking subjective, rather than objective, analysis; (2) that the methodology of post-admission narrative analysis does not fit his conclusions; and (3) the testimony would not assist the trier of fact in understanding the evidence.); *United States v. Bresnahan*, 62 M.J. 137 (C.A.A.F. 2005)(Defendant in military murder trial sough to introduce Leo's testimony to address the vulnerability of defendant's confession, and to examine coercive interrogation techniques and how the use of those techniques in this case may shed light on the confession's reliability. The military judge rejected the proffered testimony for three main reasons: (1) defense counsel never presented any evidence to suggest defendant's confession was actually false; (2) the defense presented no evidence suggesting defendant suffered from any abnormal mental or emotional problems; and (3) there

was no evidence that the defendant had a "submissive personality so weak or disoriented as to make false incriminatory statements in response to accusations of serious criminal conduct." *Id.* at 143.); *United States v. Deuman*, 892 F. Supp. 2d 881 (W.D. Mich. 2012)(Defendant in murder case planned to argue that certain incriminating statements he made to law enforcement officers during a car trip and following a polygraph examination were false. To that end, Leo was prepared to testify to the following: (1) that false confessions or incriminating statements are counterintuitive; (2) why confessions are prejudicial; (3) risk factors for false confessions, such as interrogation techniques; and (4) the framework for how false confessions occur. Leo would not offer an opinion as to whether the defendant lied or made false statements, or whether the defendant's statements were unreliable. Nonetheless, the Court excluded Leo's testimony on three main grounds: reliability, relevancy, and Rule 403.); *United States v. Juan Carlos Higuera-Cruz,* No. 99CR 2975-TW (S.D. Cal. Feb. 8, 2000), tr. at 145.)(The court held: "Therefore the motion to call Dr. Leo will be denied. I find there is inadequate showing that the reasoning or methodology underlying the proffered testimony is reliable nor has it gained acceptance in the relevant scientific community); and *United States v. Phillipos*, 2017 WL 727550 (1st Cir. Feb. 24, 2017); (The trial judge in that case found that there was "no indication that there is a body of reliable material that constitutes understanding in this area," and that "it would introduce the jury ... to a kind of faux science to present Dr. Leo's testimony." The First Circuit panel, citing other cases casting doubt on this "science," observed that "[w]hether or not we would reach the same conclusion, the record certainly shows that the one that the District Court reached is reasonable.").

  Upon information and belief, the United States also anticipates that Defendant also seeks to offer testimony from Leo about law enforcement practices, training, and assumptions

generally without tying them directly to the practices, training, or assumptions of the agents who interviewed the Defendant. That generic opinion testimony does not "fit" this case and therefore is irrelevant.

In *Daubert*, the United States Supreme Court described the issue of relevance under Rule 702 as an issue of "fit." 509 U.S. at 591. To "fit" a case, "the expert's opinion must be able to be properly applied to the facts in issue." *Hoffman v. Ford Motor Co.*, 2012 U.S. App. LEXIS 17215, 35-36 (10th Cir. Aug. 16, 2012) (holding that district court abused its discretion in admitting expert testimony that did not have sufficient bearing on the issue at hand to "fit" the case). In considering this issue, "[a] trial court must look at the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact." *Id.* (quoting *Bitler*, 400 F.3d 1227 at 1234). "Even if an expert's proffered evidence is scientifically valid and follows appropriately reliable methodologies, it might not have sufficient bearing on the issue at hand to warrant a determination that it has relevant 'fit.'" *Id.* at 36.

Leo's testimony is precisely the type of testimony the Tenth Circuit found was properly excluded in *Benally* and *Adams*. As at least two other judges in this district have found, faithful adherence to those decisions demands the exclusion of Leo's testimony. *See United States v. Ganadonegro*, 805 F. Supp. 2d 1188, 1212 (D.N.M. 2011) (Browning, J.); *United States v. Pauline Yazzie*, Case No. 1:11-cr-01876-WJ, Doc. 145 at 4-5.

Applying *Adams* and *Benally*, this Court also has excluded false confession testimony. *See United States v. Ganadonegro*, 805 F. Supp. 2d 1188, 1207-1212 (D.N.M. 2011). There, the issue was the admissibility of testimony by Dr. Roll regarding factors that might have led the defendant to falsely confess. In particular, Dr. Roll would have testified to "personality features

[the defendant had] that would increase the probability of false admissions, including...low verbal skills, his difficult time with language, his low estimate of his personal worth, low self-esteem, limited self-confidence, his deficit in attention and in concentration, his demonstration of impairment of reality testing capacities, and his susceptibility to episodes of depression." *Id*. at 1192. Based on these "personality features," Dr. Roll sought to testify to the conclusion that "[t]here are a host of language factors, cultural factors, and personality factors that would have increased the probability of . . . Ganadonegro making false admissions." *Id*.

After carefully considering the Tenth Circuit's analysis in *Adams* and *Benally*, this Court concluded that the precedent "strongly suggests that Dr. Roll's testimony does little more than vouch for the credibility of Ganadonegro's statement, and thus encroaches on the jury's exclusive function to make credibility determinations." *Id.* at 1213. Finding that the testimony "lack[ed] relevance and would not assist the trier of fact as required by Rule 702," this Court excluded it. *Id.*

## CONCLUSION

WHEREFORE, for the foregoing reasons, the United States respectfully requests that the Court exclude the expert testimonies of Leo and Lucero and prevent them from testifying at the suppression hearing.

    Respectfully submitted,

    JAMES D. TIERNEY
    Acting United States Attorney

    *Electronically filed   08/16/17*
    NOVALINE D. WILSON
    KYLE T. NAYBACK
    Assistant United States Attorneys
    Post Office Box 607
    Albuquerque, New Mexico 87102
    (505) 224-1419

I HEREBY CERTIFY that I electronically filed
the foregoing with the Clerk of the Court
using the CM/ECF system which will send
notification to defense counsel.

/*s*/
NOVALINE D. WILSON
Assistant United States Attorney