# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                 No. CR 14-0747 JB

LYLE WOODY BEGAY,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion and Memorandum to Compel Investigative Notes and Early Disclosure of Jencks Material, filed June 4, 2014 (Doc. 17)("Motion"). The Court held a hearing on July 8, 2014. The primary issues are: (i) whether the Court should compel the production of investigative notes in Plaintiff United States of America's possession that relate to interviews federal law enforcement agents conducted of potential trial witnesses; and (ii) whether the Court should compel production of the evidence Begay seeks no later than thirty days before trial. The Court concludes that: (i) the Court need not compel the United States to produce the investigative notes, because the United States has already produced or volunteered to produce them; and (ii) the Court need not compel production of the evidence Begay seeks no later than thirty days before trial, because the United States has agreed to make that production. Accordingly, the Court denies the Motion without prejudice to renew if necessary.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 11, 2014, a federal grand jury indicted Begay for one count of violating 18 U.S.C. §§ 1153, 2241(c), Aggravated Sexual Abuse, and three counts of violating 18 U.S.C.

§§ 1153, 2244(a), 2246(3), Abusive Sexual Contact. See United States' Response in Opposition to Defendant's Motion and Memorandum to Compel Investigative Notes and Early Disclosure of Jencks Material, filed June 17, 2014 (Doc. 19)("Response"). During discovery, the Federal Bureau of Investigation ("FBI") interviewed Begay and the alleged victims. See Motion at 2. Begay requests various notes that FBI agents took during these interviews. See Motion at 2. Specifically, Begay requests "[i]nvestigative notes taken of any interviews of the Defendant," "investigative notes taken of any potential witness statements by the Government," and "any Government . . . agent's notes of interviews of persons who are or may be witnesses at hearing or at trial." Motion at 2-3.

1.    **The Motion.**

In the Motion, Begay argues that "[t]he government has an obligation to produce exculpatory material which includes investigative notes." Motion at 4 (citing United States v. Padilla, No. CR 09-3598, 2011 WL 1103876, at *5 (D.N.M. 2011)(Browning, J.)). He argues that the "Jencks[1] Act codified the Defense's right to any relevant statements or reports in the Government's possession relating to its witnesses and touching the subject matter of their testimony at trial." Motion at 5 (citing 18 U.S.C. § 3500(a)-(b)).

Begay further argues that the FBI agent who interviewed him likely took notes regarding the interview, but does not confirm that the agent took notes. See Motion at 11. Begay concludes that the "Government counsel should be held responsible on the record for whatever investigative notes have been taken and are preserved." Motion at 12.

---

[1]Jencks v. United States, 353 U.S. 657 (1957); 18 U.S.C. § 3500.

2.      **The Response.**

The United States responds to the Motion.  <u>See</u> Response at 1.  The United States asserts that, "[b]ecause the information Defendant seeks has either already been disclosed by the government or clearly fall[s] outside discovery obligations, the government requests his motion be denied."  Response at 1.  According to the United States, the "Defendant does not dispute that recorded interviews and reports were provided.  He only asserts that agents' investigative notes have not been disclosed."  Response at 1.  The "Defendant offers nothing but speculation that the notes contain any material to which he is entitled to under the rules of criminal discovery."  Response at 2.

The United States details the recordings and reports it has already given to Begay from the various victim and witness interviews which the FBI conducted.  <u>See</u> Response at 2-4.  The United States then explains that, when FBI Special Agent Jennifer Sullivan interviewed Begay on the morning of July 30, 2013, the interview was not recorded, and Sullivan did not take notes.  <u>See</u> Response at 4.  The interview later in the day, which Sullivan and Navajo Nation Criminal Investigator Darryl Boyd conducted, "was audio-recorded and disclosed to Defendant."  Response at 4.  FBI Special Agent Matt Schaffer relied on the recording to draft a report summarizing the latter interview.  <u>See</u> Response at 5.  The United States disclosed that report.  <u>See</u> Response at 5.  Boyd "took down demographic information and brief notes during Defendant's audio-recorded afternoon interview."  Response at 5.

The United States argues that "[a]ny demographic information or notes taken by Sullivan, Ms. Blackwell, or Boyd during the course of the interviews is included in both the audio and video-recordings and their corresponding 302 reports."  Response at 5.  "As such, Defendant's request for this information is moot and outside the scope of discovery."  Response at 5-6.

The United States continues that it must disclose two categories of material under Brady,[2] "(1) material that tends to be exculpatory and (2) material that may be used to impeach or discredit government witnesses." Response at 6 (citing United States v. Ruiz, 536 U.S. 622, 628 (2002)). Regarding the first category, the United States "believes that it has provided all material in its possession." Response at 6. Regarding the second category, the United States argues that "well-settled case law makes clear that disclosure of evidence that may be used to discredit government witnesses is not directly exculpatory and need not be disclosed well in advance of trial." Response at 9.

Regarding Begay's request for early Jencks material, the United States argues that, "under the plain language of § 3500, Jencks Act statements are not discoverable until the declarant witness has testified on direct examination, either at a trial or [at] certain pre-trial hearings." Response at 11 (citing Fed. R. Crim. P. 26.2(g)). The United States concludes that, "[b]ecause the discovery Defendant seeks has either already been provided or falls outside the United States' disclosure obligations, the Court should deny the Defendant's motion." Response at 12.

**3. The Hearing.**

The Court held a hearing on July 8, 2014. See Draft Transcript of Motion Proceeding (taken July 8, 2014)("Tr.").[3] Begay began by explaining that "we are asking that not just the notes taken of my client's interview, but the notes taken of any Government witness that may be called at trial, and we also ask . . . [for] any witness the Government interviews." Tr. at 14:19-23

---

[2]Brady v. Maryland, 373 U.S. 83 (1963).

[3]The Court's citations to the hearing's transcript refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

(Samore).  Regarding the third category, Begay conceded that "I don't have any new sources, Judge, to say they have to disclose any witness they interview, but I do make that argument anticipating that the Court will turn it down." Tr. at 15:5-9 (Samore).

Begay continued that he was "concerned that apparently [Agent] Sullivan . . . is representing that she took no notes.  We think that is contrary to the record that will emerge at trial, and we would ask that at the very least the Government . . . state on the record the source of that information." Tr. at 15:18-24 (Samore).  Begay concluded by requesting that "anything the Government has of any of these agents regarding these interviews . . . we would ask that the Government commit on the record whether or not it has notes, whether it's disclosing everything, what the source is of any representations regarding any of these three agents . . . ." Tr. at 17:8-16 (Samore).

The United States began by stating that it "is prepared to disclose . . . notes from Special Agent Matt Schaffer, Criminal Investigator Boyd, and forensic interviewer Karen Blackwell." Tr. at 18:17-20 (Wilson).  The United States contended that it "complied with all of [its] discovery obligations under the law." Tr. at 18:22-23 (Wilson).  According to the United States, "Special Agent Sullivan did not take notes, nor was that interview recorded." Tr. at 19:7-9 (Wilson).  The Court asked: "Is that from your conversations with Ms. Sullivan?" Tr. at 19:11-12 (Court).  The United States replied: "Yes. And also with the agent in charge.  So I did talk to them." Tr. at 19:13-14 (Wilson).  The Court then asked: "Who is the agent in charge?" Tr. 19:15 (Court).  The United States replied: "Special Agent Schaffer." Tr. at 19:16 (Wilson).  The Court asked: "He's the agent, and Schaffer talked to Sullivan?" Tr. at 19:17-18 (Court). The United States confirmed: "Yes." Tr. at 19:19 (Wilson).  The Court then asked: "So you have

the information from two sources?"  Tr. at 19:20-21 (Court).  The United States confirmed: "Yes."  Tr. at 19:22 (Wilson).

The Court then asked: "Is there anything that you understand Mr. Samore's requesting that you're not producing or have not produced?"  Tr. at 19:23-25 (Court).  The United States replied: "[W]e've turned over everything that has been disclosed to me from the case agent as part of the case.  And then I also, based on counsel's motion, inquired if there were any further documents, and that's what I would be disclosing today."  Tr. at 20:1-6 (Wilson).  The Court further inquired: "Are you aware of any witness interviews related to this case that you have not turned over . . . say some witnesses that you don't intend to call at trial or anything like that?"  Tr. at 20:10-15 (Court).  The United States replied: "Not that I'm aware of."  Tr. at 20:16 (Wilson).

The Court then said to Begay: "It sounds to me like I should . . . deny your motion without prejudice to renew . . . .  It sounds like there is nothing more that you seek that the Government hasn't either given or committed to giving."  Tr. at 21:9-14 (Court).  The Court asked: "I thought Ms. Wilson said [the United States is] producing the notes, correct?"  Tr. at 21:20-21 (Court).  The United States replied: "Yes, Your Honor."  Tr. at 21:22 (Wilson).

Begay responded that he was "concerned in the wording of the Court's dialogue with [the United States] that we didn't cover notes that may not have been provided or may not have been requested, and I think <u>Kyles</u>[4] makes very clear that the Government has to ask that question of those agents."  Tr. at 22:13-18 (Samore).  Begay continued, saying that he "would ask each of the four agents that were mentioned -- Blackwell, Schaffer, and Boy[d] and . . . Sullivan," if they had provided the United States with "all notes that [they] took during the course of [their]

---

[4]<u>Kyles v. Whitley</u>, 514 U.S. 419 (1995).

investigation." Tr. at 23:2-8 (Samore). The United States represented that it had asked that question, and that it disclosed notes from Schaffer, Boyd, and Blackwell. See Tr. at 23:11-15 (Wilson). Eventually, Begay said: "I think the Court's idea is a good one, that we -- based upon the Government's representation . . . is to say denied without prejudice to refile if the disclosure proves inadequate." Tr. at 23:18-24 (Samore).

Regarding the Jencks Act, the Court said to Begay that "it does look like the Government is willing to give you early production." Tr. at 25:1-3 (Court). The Court then asked the United States if it could disclose Jencks material 30 days before trial. See Tr. at 26:14-16 (Court). The United States responded that it could make that early production. See Tr. at 26:16 (Wilson). Begay said that such an arrangement is fair. See Tr. at 26:21 (Samore). Regarding producing grand jury transcripts, the United States also indicated that it could produce them thirty days before trial, and Begay indicated that such an arrangement is fair. See Tr. at 26:22-27:5 (Court, Wilson, Samore).

The Court then observed: "[I]t looks like we worked everything out, or the Government has made the agreements or concessions or representations, so I'll deny the motion [without] prejudice to remove." Tr. at 27:8-12 (Court). Begay then asked if the order would state that it is based on the United States' representations, and the Court indicated that it would make that statement. See Tr. at 27:14-20 (Samore, Court). The Court added: "I'll probably just deny the motion but also indicate what the representations were." Tr. at 27:19-20 (Court). Begay concluded "that would be fair." Tr. at 27:21 (Samore).

## LAW REGARDING THE UNITED STATES' DUTY TO DISCLOSE IN CRIMINAL CASES

During a criminal prosecution, rule 16 of the Federal Rules of Criminal Procedure and the Due Process Clause of the Constitution of the United States of America impose upon the

United States an obligation to disclose certain evidence to a criminal defendant.  See U.S. Const.

amend. V; Fed. R. Crim. P. 16.

1.  **Rule 16.**

Rule 16 of the Federal Rules of Criminal Procedure provides:

Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:

(i)      the item is material to preparing the defense;

(ii)     the government intends to use the item in its case-in-chief at trial; or

(iii)    the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E).   Under a standard Order used in the District of New Mexico,

"[u]nless the defendant has filed [a specified] waiver, within eight days of the entry of this Order,

the Government shall provide to defendant's counsel without motion all of the information to

which defendant is entitled pursuant to Rule 16."  Order at 1-2, filed March 14, 2014 (Doc. 8).

Criminal defendants may not, however, embark on a "broad or blind fishing expedition among

documents possessed by the Government."     Jencks v. United States, 353 U.S. 657, 667

(1957)(quoting Gordon v. United States, 344 U.S. 414, 419 (1953)).  Rule 16(a)(2) provides, in

part, that rule 16 "does not authorize the discovery or inspection of reports, memoranda, or other

internal government documents made by an attorney for the government or other government

agent in connection with investigating or prosecuting the case."  Fed. R. Crim. P. 16(a)(2).  The

Supreme Court of the United States has interpreted the term "defense" in this statute as referring

to "an argument in response to the prosecution's case in chief."  United States v. Armstrong, 517

U.S. 456, 462 (1996)("[W]e conclude that in the context of Rule 16 'the defendant's defense'

means the defendant's response to the Government's case in chief.").  Additionally, rule 16 does

not require the United States to produce "reports, memoranda, or other internal government documents. . . [or] statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500." Fed. R. Crim. P. 16 (a)(2).

**2.      Due Process Clause.**

"The Due Process Clause of the Constitution requires the United States to disclose information favorable to the accused that is material to either guilt or to punishment." United States v. Padilla, No. CR 09-3598, 2011 WL 1103876, at *5 (D.N.M. 2011)(Browning, J.). In Brady v. Maryland, the Supreme Court explained that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). In Giglio v. United States, 405 U.S. 150 (1972), the Supreme Court extended the prosecution's disclosure obligation to evidence that is useful to the defense in impeaching government witnesses, even if the evidence is not inherently exculpatory. See 405 U.S. at 153; United States v. Torres, 569 F.3d 1277, 1282 (10th Cir. 2009)("Impeachment evidence is considered exculpatory for Brady purposes."); Douglas v. Workman, 560 F.3d 1156, 1172-73 (10th Cir. 2009)("[N]o distinction is recognized between evidence that exculpates a defendant and 'evidence that the defense might have used to impeach the [United States'] witnesses by showing bias and interest.'" (quoting United States v. Bagley, 473 U.S. 667, 676 (1985))); United States v. Abello-Silva, 948 F.2d 1168, 1179 (10th Cir. 1991)("Impeachment evidence merits the same constitutional treatment as exculpatory evidence."). Finally, the Supreme Court has refined Brady v. Maryland and clarified that it is not necessary that a defendant request exculpatory evidence; "[R]egardless of request, favorable evidence is material, and constitutional error results from its suppression by the government 'if

there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Kyles v. Whitley, 514 U.S. 419, 433 (1995)(quoting United States v. Bagley, 473 U.S. at 682). See Douglas v. Workman, 560 F.3d at 1172 ("The government's obligation to disclose exculpatory evidence does not turn on an accused's request."); United States v. Summers, 414 F.3d 1287, 1304 (10th Cir. 2005)("[T]he prosecution has an affirmative duty to disclose exculpatory evidence clearly supporting a claim of innocence even without request."). "[T]he Due Process Clause does not require the government to disclose before trial the names of its witnesses, just so the defense can have sufficient time to investigate their backgrounds for impeachment information." United States v. Ashley, 274 F. App'x 693, 697 (10th Cir. 2008)(unpublished).[5] See Weatherford v. Bursey, 429 U.S. 545, 559 (1977)("It does not follow from the prohibition against concealing evidence favorable to the accused that the prosecution must reveal before trial the names of all witnesses who will testify unfavorably."); United States v. Harmon, 871 F. Supp. 2d 1125, 1149 (D.N.M. 2012)(Browning, J.).

> ### a.   Timing of the Disclosure.

The prosecution's obligation to disclose evidence under Brady v. Maryland can vary

---

[5]United States v. Ashley is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted). The Court concludes that United States v. Ashley has persuasive value with respect to material issues, and will assist the Court in its preparation of this Memorandum Opinion and Order.

depending on the phase of the criminal proceedings and the evidence at issue. As a general

matter, "[s]ome limitation on disclosure delay is necessary to protect the principles articulated in

Brady v. Maryland." United States v. Burke, 571 F.3d 1048, 1054 (10th Cir. 2009). The United

States Court of Appeals for The Tenth Circuit has recognized that "[i]t would eviscerate the

purpose of the Brady rule and encourage gamesmanship were we to allow the government to

postpone disclosures to the last minute, during trial." United States v. Burke, 571 F.3d at 1054.

"[T]he belated disclosure of impeachment or exculpatory information favorable to the accused

violates due process when an 'earlier disclosure would have created a reasonable doubt of

guilt.'" United States v. Burke, 571 F.3d at 1054 (quoting United States v. Young, 45 F.3d 1405,

1408 (10th Cir. 1995)). The Tenth Circuit has stated:

> Where the district court concludes that the government was dilatory in its
> compliance with Brady, to the prejudice of the defendant, the district court has
> discretion to determine an appropriate remedy, whether it be exclusion of the
> witness, limitations on the scope of permitted testimony, instructions to the jury,
> or even mistrial.

United States v. Burke, 571 F.3d at 1054. On the other hand, "not every delay in disclosure of

Brady material is necessarily prejudicial to the defense." United States v. Burke, 571 F.3d at

1056. "To justify imposition of a remedy, the defense must articulate to the district court the

reasons why the delay should be regarded as materially prejudicial." United States v. Burke, 571

F.3d at 1056. Courts should, "[w]hen assessing the materiality of Giglio information,

. . . consider the significance of the suppressed evidence in relation to the entire record." United

States v. Gonzalez-Montoya, 161 F.3d 643, 650 (10th Cir. 1998).

When a prosecutor's obligations under Brady v. Maryland are triggered, however, they

"continue[] throughout the judicial process." Douglas v. Workman, 560 F.3d at 1173. For

instance, the obligation to disclose material under Brady v. Maryland can arise during trial. See

United States v. Headman, 594 F.3d at 1183 (10th Cir. 2010)("Although Brady claims typically arise from nondisclosure of facts that occurred before trial, they can be based on nondisclosure of favorable evidence (such as impeachment evidence) that is unavailable to the government until trial is underway.").   Additionally, the disclosure obligation continues even while a case is on direct appeal.  See United States v. Headman, 594 F.3d at 1183; Smith v. Roberts, 115 F.3d 818, 819, 820 (10th Cir. 1997)(applying Brady v. Maryland to an allegation that the prosecutor failed to disclose evidence received after trial but while the case was on direct appeal); United States v. Harry, No. CR 10-1915, 2013 WL 684671, at *5 (D.N.M. 2013)(Browning, J.).

**b.      Material Exculpatory Evidence.**

The holding in Brady v. Maryland requires disclosure only of evidence that is both favorable to the accused, and "material either to guilt or to punishment."   373 U.S. at 87. "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."   United States v. Bagley, 473 U.S. at 682.  See United States v. Allen, 603 F.3d 1202, 1215 (10th Cir. 2010).  A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. at 682 (internal quotation marks omitted).  The Tenth Circuit has noted that "[t]he mere possibility that evidence is exculpatory does not satisfy the constitutional materiality standard."   United States v. Fleming, 19 F.3d 1325, 1331 (10th Cir. 1994).  The Tenth Circuit has also found that "[d]uplicative impeachment evidence is not material."   Douglas v. Workman, 560 F.3d at 1173.   "To be material under Brady, undisclosed information or evidence acquired through that information must be admissible." Banks v. Reynolds, 54 F.3d 1508, 1521 n.34 (10th Cir. 1995)(quoting United States v. Kennedy, 890 F.2d 1056, 1059 (9th Cir. 1989)).

The burden is on the United States to produce exculpatory materials; the burden is not on the defendant to first point out that such materials exist. See Kyles v. Whitley, 514 U.S. at 437 (stating that the prosecution has an affirmative duty to disclose evidence, because "the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability' is reached"); United States v. Deutsch, 475 F.2d 55, 57 (5th Cir. 1973)(granting a mistrial for failure to produce personnel files of government witnesses), overruled on other grounds by United States v. Henry, 749 F.2d 203 (5th Cir. 1984); United States v. Padilla, 2011 WL 1103876, at *6. The United States' good or bad faith is irrelevant. See Brady v. Maryland, 373 U.S. at 87; United States v. Quintana, 673 F.2d at 299 ("Under Brady, the good or bad faith of government agents is irrelevant."). "This means, naturally, that a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence." Kyles v. Whitley, 514 U.S. at 439. The United States has an obligation to "volunteer exculpatory evidence never requested, or requested only in a general way," although the obligation only exists "when suppression of the evidence would be of sufficient significance to result in the denial of the defendant's right to a fair trial." Kyles v. Whitley, 514 U.S. at 433 (internal quotation marks omitted). On the other hand, "[t]he Constitution, as interpreted in Brady, does not require the prosecution to divulge every possible shred of evidence that could conceivably benefit the defendant." Smith v. Sec'y of N.M. Dep't of Corr., 50 F.3d 801, 823 (10th Cir. 1995). Additionally, "[t]he constitution does not grant criminal defendants the right to embark on a broad or blind fishing expedition among documents possessed by the" United States. United States v. Mayes, 917 F.2d 457, 461 (10th Cir. 1990)(quoting Jencks v. United States, 353 U.S. at 667)(internal quotation marks omitted); United States v. Harry, 2013 WL

684671, at *8.

### c.    Evidence Must Be in the United States' Possession.

"It is well settled that there is no 'affirmative duty upon the government to take action to discover information which it does not possess.'" United States v. Tierney, 947 F.2d 854, 864 (8th Cir. 1991)(quoting United States v. Beaver, 524 F.2d 963, 966 (5th Cir. 1975)). Accord United States v. Kraemer, 810 F.2d 173, 178 (8th Cir. 1987)(explaining that the prosecution is not required "to search out exculpatory evidence for the defendant"); United States v. Badonie, No. CR 03-2062, 2005 WL 2312480, at *3 (D.N.M. Aug. 29, 2005)(Browning, J.). On the other hand, "a prosecutor's office cannot get around Brady by keeping itself in ignorance, or by compartmentalizing information about different aspects of a case." Carey v. Duckworth, 738 F.2d 875, 878 (7th Cir. 1984). Under Brady v. Maryland, "[a] prosecutor must disclose information of which it has knowledge and access." United States v. Padilla, 2011 WL 1103876, at *7 (citing United States v. Bryan, 868 F.2d 1032, 1037 (9th Cir. 1989)). "A prosecutor may have a duty to search files maintained by other 'governmental agencies closely aligned with the prosecution' when there is 'some reasonable prospect or notice of finding exculpatory evidence.'" United States v. Padilla, 2011 WL 1103876, at *7 (quoting United States v. Brooks, 966 F.2d 1500, 1503 (D.C. Cir. 1992)). A prosecutor does not have a duty, however, to obtain evidence from third parties. See United States v. Combs, 267 F.3d 1167, 1173 (10th Cir. 2001)(observing that Brady v. Maryland does not oblige the government to obtain evidence from third parties). See also United States v. Huerta-Rodriguez, No. CR 09-3206, 2010 WL 3834061, at **4, 10 (D.N.M. Aug. 12, 2010)(Browning, J.)(noting that the United States cannot be compelled to produce the New Mexico State Police officers' personnel files, because the New Mexico State Police, which was not a party to the case, possessed the files, and the United States

was only able to review the files at the New Mexico State Police office, and could not remove or photocopy any documents without a subpoena); United States v. Badonie, 2005 WL 2312480, at *3 (denying a motion to compel because the New Mexico State Police possessed the documents, and the United States did not possess the documents, a defendant sought to be produced, even though the United States "could get the information [Defendant] Badonie seeks merely by requesting them"); United States v. Harry, 2013 WL 684671, at *8.

**3.      The Jencks Act.**

In Jencks v. United States, the Supreme Court held that a "criminal action must be dismissed when the Government, on the ground of privilege, elects not to comply with an order to produce, for the accused's inspection and for admission in evidence, relevant statements or reports in its possession of government witnesses touching the subject matter of their testimony at trial." 353 U.S. at 672. In so holding, the Supreme Court recognized that the

> rationale of the criminal cases is that, since the Government which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense.

353 U.S. at 671. Congress later codified Jencks v. United States' holding in 18 U.S.C. § 3500. See United States v. Kimoto, 588 F.3d 464, 475 (7th Cir. 2009)(explaining that, "the Jencks Act, 18 U.S.C. § 3500[,] . . . was enacted in response to the Supreme Court's holding in Jencks v. United States, 353 U.S. 657 . . . ").

Section 3500 of Title 18 of the United States Code provides:

> **(a)** In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

**(b)** After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

18 U.S.C. §§ 3500(a),(b). "The Jencks Act requires the government to disclose to criminal defendants any statement made by a government witness that is 'in the possession of the United States' once that witness has testified." United States v. Lujan, 530 F. Supp. 2d 1224, 1232 (D.N.M. 2008)(Brack, J.)(quoting 18 U.S.C. §§ 3500(a)-(b)). The Jencks Act "manifests the general statutory aim to restrict the use of such statements to impeachment." Palermo v. United States, 360 U.S. 343, 349 (1959). The Jencks Act's purpose is "not only to protect Government files from unwarranted disclosure but also to allow defendants materials usable for the purposes of impeachment." United States v. Smaldone, 544 F.2d 456, 460 (10th Cir.1976)(citing Palermo v. United States, 360 U.S. at 352). The Jencks Act defines statements specifically:

**(e)** The term "statement," as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means--

   **(1)** a written statement made by said witness and signed or otherwise adopted or approved by him;

   **(2)** a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

   **(3)** a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

18 U.S.C. § 3500(e). The Tenth Circuit has held: "Interview notes could be 'statements' under the [Jencks] Act if they are substantially verbatim." United States v. Smith, 984 F.2d 1084, 1086 (10th Cir. 1993). At least one district court within the Tenth Circuit has distinguished interview

notes from reports that "embody only the agent's epitomization, interpretation, or impression of an interview," finding that the latter are not producible under the Jencks Act. United States v. Jackson, 850 F. Supp. 1481, 1508 (D. Kan. 1994)(Crow, J.). In United States v. Lujan, the Honorable Robert C. Brack, United States District Judge for the District of New Mexico, explained that rough interview notes may be discoverable under the Jencks Act when a defendant makes "at least . . . a colorable claim that an investigator's discarded rough notes contained exculpatory evidence not included in any formal interview report provided to the defense." 530 F. Supp. 2d at 1266. Judge Brack went on to hold that, "[b]ecause the contents of rough interview notes may in some cases be subject to disclosure and because the potential impeachment value of the notes may not become evident until trial," the United States must preserve its rough interview notes "made by law enforcement agents during interview of potential witnesses" under 18 U.S.C. § 3500. 530 F. Supp. 2d at 1267. See United States v. Cooper, 283 F. Supp. 2d 1215, 1238 (D. Kan. 2003)(Crow, J.)(noting that rough interview notes may be discoverable under the Jencks Act); United States v. Jackson, 850 F. Supp. at 1508-09 (finding that interview notes may be producible under the Jencks Act).

The defendant bears the initial burden of showing that particular materials qualify under the Jencks Act, but the defendant's burden is not heavy. See United States v. Smaldone, 544 F.2d at 460 ("[T]he burden is on the defendant to show that particular materials qualify as 'Statements' and that they relate to the subject matter of the testimony of the witness."). To satisfy this burden, the defendant need not prove that particular materials are within the Jencks Act's scope, as the documents are not in the defendant's possession, but rather, "must plainly tender to the Court the question of the producibility of the document at a time when it is possible for the Court to order it produced, or to make an appropriate inquiry." United States v. Smith,

984 F.2d at 1086 (quoting <u>Ogden v. United States</u>, 303 F.2d 724, 733 (9th Cir. 1962)). The defendant's demand for documents under the Jencks Act must be sufficiently precise for a court to identify the requested statements. <u>See</u> <u>United States v. Smith</u>, 984 F.2d at 1086. For example, in <u>United States v. Smith</u>, the Tenth Circuit concluded that a defendant had met his burden and made a prima facie showing that a statement of a witness existed which may be producible under the Jencks Act when a government witness testified during the United States' case-in-chief that a government agent had interviewed her before testifying, and the defense counsel moved for production of the notes. <u>See</u> 984 F.2d at 1085-86. Once the defendant makes a prima facie showing that a witness statement exists that may be producible under the Jencks Act, the court should conduct a hearing or *in camera* review of the statement. <u>United States v. Smith</u>, 984 F.2d at 1086.

The Court has applied the Jencks Act to Drug Enforcement Agency agents' notes, generated from interviews with defendants, holding that the notes must be disclosed to the defendants after the agents testify at trial. <u>See</u> <u>United States v. Goxcon-Chagal</u>, No. CR 11-2002, 2012 WL 3249473, at **2, 6 (D.N.M. Aug. 4, 2012)(Browning, J.). In <u>United States v. Tarango</u>, 760 F. Supp. 2d 1163 (D.N.M. 2009)(Browning, J.), the Court, applying 18 U.S.C. § 3500, held that the United States must produce FBI agents' 302s, after the United States' witnesses testified at trial, to the extent those reports contained statements from witnesses who testified at trial. <u>See</u> 760 F. Supp. 2d at 1164, 1167; <u>United States v. Harry</u>, 2013 WL 684671, at *11.

<u>**ANALYSIS**</u>

The Court need not compel the United States to produce the investigative notes, because the United States has already produced or volunteered to produce them. The Court also need not

compel production of the evidence Begay seeks no later than thirty days before trial, because the United States has agreed to make this production at that time.  Accordingly, the Court denies the Motion without prejudice.

## I.     THE UNITED STATES HAS AGREED TO PRODUCE THE INVESTIGATIVE NOTES.

Begay seeks to compel the production of law enforcement agents' notes taken during their interviews with him and with other potential witnesses.  See Motion at 2-4.  The United States has a duty to produce any exculpatory material evidence to Begay.  See United States v. Padilla, 2011 WL 1103876, at *5 ("The Due Process Clause of the Constitution requires the United States to disclose information favorable to the accused that is material to either guilt or to punishment."); United States v. Tarango, 760 F. Supp. 2d at 1164, 1167 (requiring the United States to produce FBI reports, including any 302's, which contain statements from prosecution witnesses after those witnesses testify at trial).

At the hearing, the United States told the Court that it "is prepared to disclose . . . notes from Special Agent Matt Schaffer, Criminal Investigator Boyd, and forensic interviewer Karen Blackwell."  Tr. at 18:17-20 (Wilson).  The Court then said to Begay: "It sounds to me like I should . . . deny your motion without prejudice to renew . . . .  It sounds like there is nothing more that you seek that the Government hasn't either given or committed to giving."  Tr. at 21:9-14 (Court).  "I thought Ms. Wilson said [the United States is] producing the notes, correct?"  Tr. at 21:20-21 (Court).  The United States replied: "Yes, Your Honor."  Tr. at 21:22 (Wilson).  In short, the United States has provided, or has promised to provide, Begay with all of the investigative notes that he has requested.

At the hearing, Begay was concerned that the United States may not possess all of the requested notes.  Begay said that he wanted the United States to "ask each of the four agents that

were mentioned -- Blackwell, Schaffer, and Boy[d] and . . . Sullivan" -- if they had provided the United States with "all notes that [they] took during the course of [their] investigation." Tr. at 23:2-8 (Samore). The United States represented that it had asked that question, and that it had disclosed notes from Schaffer, Boyd, and Blackwell. See Tr. at 23:11-15 (Wilson). Eventually, Begay said: "I think the Court's idea is a good one, that we -- based upon the Government's representation . . . is to say denied without prejudice to refile if the disclosure proves inadequate." Tr. at 23:18-24 (Samore). In other words, Begay is satisfied with the United States' commitment to voluntarily produce all of the requested notes.

Regarding the fourth agent, Begay was also concerned about the United States' representation that Sullivan did not take notes in her interview. According to the United States, "Special Agent Sullivan did not take notes, nor was that interview recorded." Tr. at 19:7-9 (Wilson). The Court asked the United States, however: "Is that from your conversations with Ms. Sullivan?" Tr. at 19:11-12 (Court). The United States replied: "Yes. And also with the agent in charge. So I did talk to them." Tr. at 19:13-14 (Wilson). The Court confirmed that the United States "[had] th[at] information from two sources." Tr. at 19:20-21 (Court). The United States replied: "Yes." Tr. at 19:22 (Wilson).

As the Court said at the hearing, Begay's questions regarding whether Sullivan took notes are "fair game" at a suppression hearing or at trial, but, for this Motion's purposes, the Court is satisfied with the United States' representations regarding Sullivan's interview. Tr. at 24:1-3 (Court). In short, because the United States has committed to producing voluntarily all that Begay requests, and because Begay conceded that he thought denying the Motion without prejudice is appropriate, the Court will deny his Motion without prejudice to renew if necessary. See Tr. at 23:18-24 (Samore)(conceding that "I think the Court's idea is a good one, that we --

based upon the Government's representation . . . is to say denied without prejudice to refile if the disclosure proves inadequate").

## II.     THE UNITED STATES HAS AGREED TO PRODUCE THE REQUESTED EVIDENCE NO LATER THAN THIRTY DAYS BEFORE TRIAL.

The Court need not compel the production of evidence that Begay seeks no later than thirty days before trial, because the United States has agreed to make that production at that time. Beyond that which the United States is required to produce under Brady v. Maryland and rule 16, Begay does not have a right to compel the production of any law enforcement agents' notes from interviews with potential witnesses until those witnesses testify at trial. See Fed. R. Crim. P. 16(a)(2) (stating rule 16 "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case").  The United States must disclose to Begay, after the witness testifies at trial, any investigative notes containing statements from those witnesses, whether in quotation or which are substantially verbatim, even if only in part.  See 18 U.S.C. § 3500(b) ("After a witness called by the United States has testified on direct examination, the court shall . . . order the United States to produce any statement . . . of the witness in possession of the United States which relates to the subject matter as to which the witness has testified."); United States v. Smith, 984 F.2d at 1086 ("Interview notes could be 'statements' under the [Jencks] Act if they are substantially verbatim."); United States v. Tarango, 760 F. Supp. 2d at 1164, 1167 (requiring the United States to produce FBI reports, including any 302s, which contain statements from prosecution witnesses, after those witnesses testify at trial).

Here, however, the United States has agreed to produce the requested information thirty days before trial.  At the hearing, regarding the Jencks Act, the Court said to Begay that "it does

look like the Government is willing to give you early production." Tr. at 25:1-3 (Court). The Court then asked the United States if it could disclose <u>Jencks</u> material thirty days before trial. <u>See</u> Tr. at 26:14-16 (Court). The United States responded that it could make the production at that time. <u>See</u> Tr. at 26:16 (Wilson). Begay said that such an arrangement is fair. <u>See</u> Tr. at 26:21 (Samore). Regarding producing grand jury transcripts, the United States also indicated that it could produce them thirty days before trial, and Begay indicated that such an arrangement is fair. <u>See</u> Tr. at 26:22-27:5 (Court, Wilson, Samore).

The Court then observed: "[I]t looks like we worked everything out, or the Government has made the agreements or concessions or representations, so I'll deny the motion [without] prejudice." Tr. at 27:8-12 (Court). Begay then asked if the order would state that it is based on the United States' representations, and the Court indicated that it would make that notation. <u>See</u> Tr. at 27:14-20 (Samore, Court). The Court added: "I'll probably just deny the motion but also indicate what the representations were." Tr. at 27:19-20 (Court). Begay concluded that "that would be fair." Tr. at 27:21 (Samore). In short, because the parties agreed that early disclosure no later than thirty days before trial was a fair arrangement, and because Begay agreed that denying the Motion without prejudice to renew if necessary would be proper, the Court will deny the Motion without prejudice to Begay to refile if necessary down the road.

**IT IS ORDERED** that the requests in the Defendant's Motion and Memorandum to Compel Investigative Notes and Early Disclosure of Jencks Material, filed June 4, 2014 (Doc. 17), are denied without prejudice to Defendant Lyle Woody Begay to renew if he decides that a future request is necessary.

_____
UNITED STATES DISTRICT JUDGE

_Counsel:_

Damon P. Martinez
  United States Attorney
Kyle T. Nayback
Novaline Wilson
Michael D. Murphy
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

      _Attorneys for the Plaintiff_

John F. Samore
Albuquerque, New Mexico

      _Attorney for the Defendant_