# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                    No. CR 14-0747 JB

LYLE WOODY BEGAY,

      Defendant.

## <u>UNSEALED[1] MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) the United States' Sealed Motion to Remedy Rule 17 Violation, filed January 22, 2016 (Doc. 82)("Motion"); and (ii) the United States' Sealed Emergency Motion for Protective Order, filed January 22, 2016 (Doc. 83)("Emergency Motion"). The Court held a hearing on February 4, 2016. The primary issues are: (i) whether rule 17(c)(3) of the Federal Rules of Criminal Procedure permitted Defendant Lyle Woody Begay to seek through an ex parte proceeding a subpoena duces tecum for the alleged victim's, Liberty Davis, school records; (ii) whether the subpoena complied with the requirements of <u>United States v. Nixon</u>, 418 U.S. 683 (1974)("<u>Nixon</u>"); (iii) whether the

---

[1]In its Sealed Ex Parte Memorandum Opinion and Order, filed December 20, 2017 (Doc. 142)("Sealed MOO"), the Court inquired whether Begay had any proposed redactions to protect confidential information within the Sealed MOO before the Court published a public version of the Sealed MOO. <u>See</u> Sealed MOO at 1 n.1. The Court gave Begay ten calendar days to provide notice of any proposed redactions. See Sealed MOO at 1 n.1. Begay has not contacted the Court or made any filings within CM/ECF to indicate that he has any proposed redactions. Consequently, the Court is now re-filing the Sealed MOO in an unsealed form.

    The Court also gave Begay ten calendar days to send to the Court any proposed redactions to the Sealed Ex Parte Motion Authorizing Rule 17(c) Subpoena, filed November 1, 2015 (Doc. 74)("Ex Parte Motion"), and the Court's Sealed Ex Parte Order Authorizing Rule 17(c) Subpoena, filed November 6, 2015 (Doc. 75)("Ex Parte Order"). <u>See</u> Sealed MOO at 1 n.1. Begay has not contacted the Court or made any filings within CM/ECF to indicate any proposed redactions to those documents. Consequently, the Court will order the Ex Parte Motion and the Ex Parte Order unsealed. Other than this footnote and the new orders added on page 25, this Memorandum Opinion and Order is identical to the Sealed MOO.

Plaintiff United States of America was entitled to notice of the subpoena duces tecum application; (iv) whether the Court should have notified Davis that the Court would authorize the subpoena; and (v) whether the Court should have ordered production at the Court rather than at Begay's counsel's office. The Court concludes that: (i) rule 17(c)(3) permitted Begay to seek a subpoena duces tecum ex parte; (ii) the subpoena complied with <u>Nixon</u>'s requirements; (iii) the United States was not entitled to notice of the subpoena; (iv) Davis was entitled to notice of the subpoena under rule 17(c), because exceptional circumstances did not exist; and (v) the Court should have ordered production at the Court rather than Begay's counsel's office. Accordingly, the Court grants in part and denies in part the Motion, and denies the Emergency Motion as moot.

## FACTUAL BACKGROUND

In February, 2004, Begay allegedly "did knowingly engage in and attempt to engage in a sexual act with [Davis], a child who had not attained the age of 12 years." Indictment at 1, filed March 11, 2014 (Doc. 2)("Indictment"). The alleged sexual act included both "penetration" and "intentional touching." Indictment at 1-2. Begay is an Indian and the alleged event occurred in Indian Country. <u>See</u> Indictment at 1.

## PROCEDURAL BACKGROUND

On March 11, 2014, a federal grand jury indicted Begay for one count of violating 18 U.S.C. §§ 1153, 2241(c), Aggravated Sexual Abuse, and three counts of violating 18 U.S.C. §§ 1153, 2244(a), and 2246(3), Abusive Sexual Contact. <u>See</u> Indictment at 1-2. During discovery, Begay filed a Sealed Ex Parte Motion Authorizing Rule 17(c) Subpoena, filed November 1, 2015 (Doc. 74)("Ex Parte Motion"). In the Ex Parte Motion, Begay explains that an important aspect of the case is whether the alleged criminal conduct occurred when Begay

was a minor or an adult, which could substantially alter the sentence that Begay might receive if convicted.  See Ex Parte Motion at 1.  According to Begay, both he and Davis made statements that referenced events around the school year, "which would place the incident in time."  Ex Parte Motion at 1.  In other words, Begay believed that the school records might indicate whether the alleged crime occurred when he was a minor or an adult.  See Ex Parte Motion at 1.  Accordingly, Begay moved the Court to authorize the issuance of a subpoena for Davis' school records.  See Ex Parte Motion at 4.  The Court granted the Ex Parte Motion.  See Ex Parte Order at 1.

On January 20, 2016, Davis contacted an Assistant United States Attorney and said that she had received a letter from the Gallup-McKinley County Public Schools informing her that the school district had received a subpoena for her school records.  Motion at 2.  The United States contacted Gallup-McKinley Schools and learned that the school district had complied with Begay's subpoena, and that it had sent the school records directly to Begay's attorney.  See Motion at 2.  Upon learning this information, the United States filed its Motion objecting to the Ex Parte Motion, requesting that the Court quash the subpoena, order Begay to return the school records, and that the United States receive notice of any future subpoenas.  See Motion at 3.

1.    **The Motions.**

The United States first contends that "Rule 17(c) is not intended to provide a means of discovery for criminal defendants."  Motion at 4 (citing Nixon, 418 U.S. at 698-99).  According to the United States, "'the need for evidence to impeach witnesses is insufficient to require its production in advance of trial.'"  Motion at 4 (quoting Nixon, 418 U.S. at 701).  The United States thus objects to the subpoena, because it believes that Begay requested it to obtain impeachment information against Davis.  See Motion at 5.

The United States next contends that proper notice was not given to Davis before the issuance of the subpoena. <u>See</u> Motion at 5. The United States argues that "the subpoena violates the notice requirement of Rule 17(c)(3) and should be quashed and [the victim's] records should be returned." Motion at 6. Similarly, the United States contends that it should have received notice of the subpoena request. <u>See</u> Motion at 6. It argues that

> the plain language of Rule 17(c) requires that where production is to take place in advance of the hearing, production is to be to the Court and both parties are to be permitted to inspect the documents. There is no provision in the Rule for advance production and inspection by one party only.

Motion at 6. According to the United States, "if both sides are entitled to know of the results of a subpoena, the United States must be entitled to notice of efforts to secure such documents." Motion at 7. The United States adds that, in <u>United States v. Vigil</u>, No. CR 10-2310, 2013 WL 3270995, at *8 (D.N.M. 2013)(Browning, J.)("<u>Vigil</u>"), the Court "required the third party to make production to the court and *notified both parties* of the availability of the documents." Motion at 8 (emphasis in original)(citing <u>Vigil</u>, 2013 WL 3270995, at *8).

The United States concludes by requesting that the Court unseal the subpoena-related documents, quash the subpoena, order the school records returned, and notify the United States of any future subpoenas that Begay requests. <u>See</u> Motion at 9. The United States concurrently filed a short Emergency Motion requesting "an emergency protective order pending resolution of the issues raised in its motion." Emergency Motion at 1. According to the United States, "great harm could result to the privacy of the victim in this case" without such an order. Emergency Motion at 1.

**2.     The Response.**

Begay responds to the Motion. <u>See</u> Mr. Begay's Sealed Response to Government's Sealed Motion to Remedy Rule 17 Violation, filed February 2, 2016 (Doc. 87)("Response").

Begay first notes that he had initially requested the school records from the United States, thereby placing the United States on notice, and that only after the United States refused to provide the school records did Begay seek an ex parte rule 17 subpoena. Response at 1-2. Begay's counsel further notes that only he and his private investigator, and not Begay himself, reviewed the school records. Begay adds that "[n]one of these records turns out to be relevant or material to any disputed issue and will not be submitted as an exhibit . . . . [and] upon receiving the Government's motion, the Defense sent a copy of the records immediately to the Government." Response at 2. Begay concludes that the Court should deny the Motion. <u>See</u> Response at 9.

### 3. The Reply.

The United States replies to the Response. <u>See</u> United States' Sealed Reply to Mr. Begay's Sealed Response to Government's Motion to Remedy Rule 17 Violation, filed February 3, 2016 (Doc. 88)("Reply"). The United States argues that Begay conflates the post-subpoena victim notification that occurred pursuant to the Family Education Rights and Privacy Act, 20 U.S.C. 1232(g), ("FERPA"), with the rule 17(c)(3) victim notification "that should have occurred before the subpoena was issued." Reply at 1. The United States adds that the school records "should have been disclosed directly to the Court for both parties to review under Rule 17(c)(1), rather than being sent directly to the Defendant." Reply at 2.

The United States next contends that Begay sought the school records for an impermissible purpose, because Begay's "concession that he sought the evidence in order to impeach the victim is impermissible under <u>United States v. Nixon</u>, 418 U.S. 683, 701 (1974)." Reply at 2. The United States continues that it only "opposes the ex parte nature of Defendant's request" and "is merely asking that the procedures for Rule 17(c) subpoenas be followed."

Reply at 2.  The United States concludes by requesting that the school records be returned and that "the United States receives notice of any other Rule 17(c) subpoena motions."  Reply at 3.

**4.    The Hearing.**

The Court held a hearing on February 4, 2016.  <u>See</u> Draft Transcript of Motion Proceeding (taken February 4, 2016)("Tr.").[2]  The Court began by saying: "I would agree with the Government that probably I should have ordered that the documents be produced to the Court here, and then made a determination as to who saw those documents."  Tr. at 3:17-21 (Court).  The Court then asked Begay: "Do you have any problem with [the United States] seeing the motion."  Tr. at 4:7-8 (Court).  Begay responded that he did, saying that the United States was "patrolling for the defense arguments."  Tr. at 4:19-20 (Samore).

The Court proposed the solution that Begay surrender his copies of the school records to the United States and represent to the Court that he did so.  <u>See</u> Tr. at 7:1-7 (Court).  Begay responded that he preferred to surrender the records the Court and have the Court keep them under seal, saying "there is no reason the defense should surrender them when the Government does not."  Tr. at 7:9-10 (Samore).  Begay's counsel added that Begay himself had not seen the school records.  <u>See</u> Tr. at 8:13-14 (Samore).

The Court stated: "I should have order[ed] the . . . documents be, as I did in the <u>Vigil</u>[3] case, brought to the Court rather than to Mr. Samore . . .  I do admit that I should have [been] consistent with my opinion in <u>Vigil</u>."  Tr. at 8:23-9:4 (Court).  The United States responded that Begay should return the records, and that the Court should order Begay not to use the records as evidence, especially because Begay concedes that he will not use them.  <u>See</u> Tr. at 11:1-4

_____

[2]The Court's citations to the hearing's transcript refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

[3]<u>Vigil</u>, 2013 WL 3270995.

(Wilson). The United States asked that "if there are any other ex parte motions relating to victim's information in this case that we'll follow the procedures under Vigil." Tr. at 15:10-14 (Wilson).

The Court concluded that the Motion and the Emergency Motion are "a grant in part and deny in part. I'll probably file an opinion and I'll file it ex parte, give Mr. Samore a little opportunity to suggest redactions, and then I'll disclose the rest." Tr. at 22:14-17 (Court).

## RELEVANT LAW REGARDING RULE 17(c)

Rule 17(c) of the Federal Rules of Criminal Procedure states:

(c)     **Producing Documents and Objects.**

(1)     **In General.** A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

(2)     **Quashing or Modifying the Subpoena.** On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

(3)     **Subpoena for Personal or Confidential Information About a Victim.** After a complaint, indictment, or information is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order. Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object.

Fed. R. Crim. P. 17(c). As the Supreme Court of the United States noted in Bowman Dairy Co. v. United States, 341 U.S. 214 (1951), a subpoena is not intended to provide a means of discovery. See 341 U.S. at 220. See also United States v. Badonie, No. CR 03-2062, 2005 WL 2312472, at *1 (D.N.M. Aug. 10, 2005)(Browning, J.)("A subpoena is not a discovery substitute."). The Supreme Court has stated:

[T]o require production prior to trial, the moving party must show: (1) that the

documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

Nixon, 418 U.S. at 699-700(footnote omitted). See United States v. Abdush-Shakur, 465 F.3d 458, 467 (10th Cir. 2006); United States v. Padilla, No. 09-3598, 2011 WL 1103872, at *3 (D.N.M. March 14, 2011)(Browning, J.); United States v. Badonie, 2005 WL 2312472, at *1 ("[A] criminal subpoena requires that the requested information have: (i) relevancy; (ii) admissibility; and (iii) specificity. The subpoena cannot be for a general 'fishing expedition,' and the requested information must be necessary to properly prepare for trial."). "Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." Nixon, 418 U.S. at 701.

## 1.    Ex Parte Proceedings for Subpoenas.

Courts have disagreed whether rule 17(c) permits ex parte proceedings for subpoenas duces tecum, in part because the language in rule 17(c) does not expressly permit ex parte proceedings. Compare United States v. Urlacher, 136 F.R.D. 550, 552 (W.D.N.Y. 1991)(Telesca, C.J.)("Rule 17(c), however, simply does not support an ex parte application for such a subpoena, and the defendant has provided no other reason why the court should grant his request without benefit of notice to others involved."), with United States v. Beckford, 964 F. Supp. 1010, 1029 (E.D. Va. 1997)(Payne, J.)(stating that "[t]he textual rationale" that courts not permitting ex parte applications under rule 17(c) have followed "is not persuasive . . . because the text of the rule neither permits nor forecloses the employment of ex parte process"). Rule 17(b), on the other hand, expressly permits ex parte proceedings for subpoenas of witnesses. See Fed. R. Crim. P. 17(b) ("Upon a defendant's ex parte application, the court must order that a

subpoena be issued for a named witness if the defendant shows an inability to pay the witness's fees and the necessity of the witness's presence for an adequate defense.").

Courts that have not permitted ex parte proceedings and/or applications under rule 17(c) have relied on the difference in language between rule 17(c) and rule 17(b), and the problematic nature of ex parte proceedings. The Honorable Edward W. Nottingham, United States District Judge for the United States District Court for the District of Colorado, explained:

> The scheme of rule 17 supports the view that Congress intended to distinguish between pretrial subpoenas duces tecum and trial subpoenas ad testificandum, at least insofar as <u>ex parte</u> procedures are concerned. According to the plain language of rule 17(b), the <u>ex parte</u> procedure is available only (1) to indigent defendants and (2) for the production of witnesses at trial. The <u>ex parte</u> procedure was developed to aid indigent defendants. There is no suggestion in these cases that the <u>ex parte</u> procedure would be available for financially able defendants such as Hart.
>
> In addition, defendant does not cite any authority which suggests that the <u>ex parte</u> procedure is available for the production of documents. On the contrary, the mechanism for obtaining documents, rule 17(c), negates any assumption that production should be on an <u>ex parte</u> basis. The plain language of rule 17(c) could not be clearer. Where a defendant seeks the production of documents prior to trial, the court may permit these documents "to be inspected by the parties and their attorneys." There can be no right to an <u>ex parte</u> procurement of subpoenaed documents pretrial if the court has discretion to supervise their production by permitting both parties to inspect them prior to trial.
>
> . . . .
>
> By requesting an <u>ex parte</u> review of documents before trial, defendant is attempting to convert rule 17(c) into a grand jury-type procedure for private litigants. The courts, however, have uniformly held that rule 17(c) subpoenas may not be used as a discovery device. Defendant's suggested use of rule 17(c) would clearly eviscerate the courts' admonition.

<u>United States v. Hart</u>, 826 F. Supp. 380, 381-82 (D. Colo. 1993)(citations omitted). Judge Nottingham also recognized that there is a "presumption in favor of a first amendment right to access to pretrial criminal proceedings," which "would be undermined by permitting an <u>ex parte</u> inspection of pretrial documents." 826 F. Supp. at 381.

Other courts concluding that ex parte proceedings are not appropriate have focused on rule 17(c)'s language, which provides that both the parties and attorneys are permitted to inspect the subpoenaed documents. See Fed. R. Crim. P. 17(c) ("When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them."); United States v. Urlacher, 136 F.R.D. at 554 ("Discretion is also given the court to provide with respect to the subpoenaed items, presumably in an appropriate order, 'upon their production . . . . [for] inspect[ion] by the parties and their attorneys.'" (emphasis in original)(quoting Fed. R. Crim. P. 17(c))). The Honorable Kenneth R. Fisher, United States Magistrate Judge for the Western District of New York, also recognized that, while in camera review of material subpoenaed under rule 17(c) may in some cases be appropriate, it did not follow that a defendant should have the ability to have the proceedings take place ex parte:

> It may be that the defendant or the evidence custodian will have a legitimate interest in securing an in camera review by the court of the documents demanded for the purpose of obtaining a determination that the subpoena duces tecum attempts improper discovery of nonevidentiary material, or that it seeks privileged material. But the allowance for in camera review in such circumstances does not also mean that an otherwise ex parte or secret proceeding is authorized in other than the situations contemplated in Rule 17(b) and 18 U.S.C. § 3006A(e).

United States v. Urlacher, 136 F.R.D. at 556.

Courts that have permitted ex parte proceedings under rule 17(c) have done so by analogizing to rule 17(b), which permits ex parte proceedings. The Honorable Robert E. Payne, United States District Judge for the Eastern District of Virginia, has concluded that "[t]he textual rationale" that courts not permitting ex parte applications under rule 17(c) have followed "is not persuasive . . . because the text of the rule neither permits nor forecloses the employment of ex parte process." United States v. Beckford, 964 F. Supp. at 1029. Judge Payne also held that some courts' concerns regarding "a First Amendment right of access to pre-trial criminal

proceedings" have been "significantly overstated," and found that the "right to access is not . . . an absolute one." 964 F. Supp. at 1029. Nevertheless, Judge Payne determined that "Rule 17(c) authorizes ex parte procedure with respect to the issuance of pretrial subpoenas only in exceptional circumstances," because, "[o]rdinarily, ex parte procedure will be unnecessary and thus inappropriate." 964 F. Supp. at 1030.

Other courts have similarly held that, while rule 17(c) may not contemplate ex parte proceedings, such procedures may be appropriate in extraordinary cases. See United States v. Stewart, No. 96-583, 1997 WL 103700, at *2 (E.D. Pa. 1997)("The plain language of Rule 17(c) does not contemplate an ex parte procedure, at least not absent extraordinary circumstances. . . . The government has not established that secrecy is required to preserve the source or integrity of evidence."). The Court held in Vigil that "[r]ule 17(c) allows, consistent with rule 17(b) procedures, ex parte procedures for a subpoena duces tecum." Vigil, 2013 WL 3270995, at *8. The Court reasoned that a contrary holding may discriminate against indigent defendants. Generally, non-indigent defendants are not obligated to give notice to the opposing party to issue a subpoena duces tecum. Vigil, 2013 WL 3270995, at *17. See United States v. Florack, 838 F. Supp. 77, 78 (W.D.N.Y. 1993)(Larimer, J.)("Obviously, under the . . . procedure [specified in rule 17(a)], leave of courts is not required and no notice need be given to the Government."). Given that non-indigent defendants do not need to give notice to the opposing party to obtain a subpoena duces tecum, the Court concluded that "rule 17(c) permits ex parte proceedings under the same circumstances as rule 17(b) would permit." Vigil, 2013 WL 3270995, at *16.

Indigent defendants may therefore take advantage of rule 17(b) ex parte applications for rule 17(c) subpoenas. The Court may grant the request for subpoenas duces tecum when "the

defendant shows an inability to pay the . . . fees" for the subpoenas duces tecum and shows "the necessity of the" requested materials to present "an adequate defense." Fed. R. Crim. P. 17(b).

### 2. __Notice to the Opposing Party__.

The Court has concluded that "rule 17(c) does not require notice to the opposing party." Vigil, 2013 WL 3270995, at *9. The entirety of rule 17 refers to providing notice of the subpoena to someone only once, specifically in rule 17(c)(3) where "the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object." The advisory committee's note to the 2008 amendments to rule 17(c)(3) clarify that there may be exceptional circumstances where it would not be necessary to give notice of the subpoena to anyone under rule 17(c)(3), including the victim:

> The amendment provides a mechanism for notifying the victim, and makes it clear that a victim may move to quash or modify the subpoena under Rule 17(c)(2) -- or object by other means such as a letter -- on the grounds that it is unreasonable or oppressive. The rule recognizes, however, that there may be exceptional circumstances in which this procedure may not be appropriate. Such exceptional circumstances would include, evidence that might be lost or destroyed if the subpoena were delayed or a situation where the defense would be unfairly prejudiced by premature disclosure of a sensitive defense strategy. The Committee leaves to the judgment of the court a determination as to whether the judge will permit the question whether such exceptional circumstances exist to be decided ex parte and authorize service of the third-party subpoena without notice to anyone.

Fed. R. Crim. P. 17(c)(3) advisory committee's note to 2008 amendment. The advisory committee's note to the 1966 amendments to rule 17(b) also discusses that "subpoenas [are] issued in blank without any disclosure." Fed. R. Crim. P. 17(b) advisory committee's note to 1966 amendment.

Rule 45(b)(1) of the Federal Rules of Civil Procedure, on the other hand, requires that "notice must be served on each party" before the service of a "subpoena [that] commands the production of documents, electronically stored information, or tangible things or the inspection

of premises." Fed. R. Civ. P. 45(b)(1). Given the exclusion of language requiring notice to the opposing party in rule 17 of the Federal Rules of Criminal Procedure and the inclusion of that language in rule 45(b)(1) of the Federal Rules of Civil Procedure, the language of these rules warrants a construction that there is no notice requirement for the opposing side under rule 17.[4] The Supreme Court has contrasted between the rules of criminal procedure and the rules of civil procedure when analyzing a given rule of procedure. See Black v. United States, 561 U.S. 465, 472 (2010)("In addressing this issue, we note first the absence of any provision in the Federal Rules of Criminal Procedure for submission of special questions to the jury. . . . In contrast, the Federal Rules of Civil Procedure provide for jury interrogatories of two kinds: special verdicts . . . and general verdicts . . . ."). Additionally, the United States Court of Appeals for the Fifth Circuit has noted that it is appropriate to consult a parallel civil or criminal rule of procedure to guide the interpretation of a given rule of procedure. See United States v. Redd, 355 F.3d 866, 874 (5th Cir. 2003)("[O]ur cases dealing with the parallel rule under the Federal Rules of Civil Procedure, Rule 51, may guide our analysis."). Additionally, courts must interpret a statute based on the language that appears in the statute. See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. at 194 ("Statutory construction must begin with the language employed by [the writer] and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.").

Other case law indicates that parties in a criminal case do not have to normally seek leave

---

[4]Courts apply the rules of statutory construction to the federal rules of criminal and civil procedure. See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)(applying the expressio unius est exclusio alterius canon when interpreting rule 9(b) of the Federal Rules of Civil Procedure); Hillis v. Heineman, 626 F.3d 1014, 1017-18 (9th Cir. 2010)("This same principle of statutory construction applies to interpreting the Federal Rules of Civil Procedure."); In re Kubler, No. 11-0048, 2012 WL 394680, at *11 (D.N.M. Jan. 25, 2012)(Browning, J.)("The rules of statutory construction apply to the Federal Rules . . . .").

of court or give notice to the opposing side to issue a subpoena duces tecum.  The Fifth Circuit

held, in a case rejecting the government's argument that it was entitled to a greater degree of

disclosure of the defendant's rule 17(b) subpoenas: "The government should not be able to

obtain a list of adverse witnesses in the case of a defendant unable to pay their fees when it is not

able to do so in the cases of defendants able to pay witness fees."  United States v. Meriwether,

486 F.2d 498, 506 (5th Cir. 1973).  The United States Court of Appeals for the Fourth Circuit

similarly discussed a procedure under rule 17(b) adopted to hide the identity of the defendants'

witnesses until trial:

> The court conducted an ex parte proceeding, pursuant to Rule 17(b), at which
> Espinoza's counsel was requested to reveal to the court the identity of those
> witnesses and generally what testimony they were expected to give at trial, all for
> the limited purpose of enabling the court to determine which of them necessarily
> must, and which need not, be subpoenaed at government expense to be present at
> Espinoza's trial for his adequate defense.  Espinoza's counsel complied with the
> court's request "under protest."   The court took effective steps to assure that all
> such revelations made by Espinoza's counsel would, as they did, remain further
> undivulged and inviolate.

United States v. Espinoza, 641 F.2d 153, 157 (4th Cir. 1981).  Accordingly, the Court concludes

that rule 17(c) does not require notice to an opposing party.  See Vigil, 2013 WL 3270995, at

*12.

### 3.    Location of Production.

The Court has required production "at a formal proceeding at the courthouse rather than

at the office of . . . counsel."  Vigil, 2013 WL 3270995, at *20.  Rule 17(a) states that a subpoena

"command[s] the witness to attend and testify at the time and place the subpoena specifies."

Fed. R. Crim. P. 17(a).  Rule 17(c)(1) provides:

> A subpoena may order the witness to produce any books, papers, documents, data,
> or other objects the subpoena designates.  The court may direct the witness to
> produce the designated items in court before trial or before they are to be offered
> in evidence.  When the items arrive, the court may permit the parties and their

attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1). As the United States Court of Appeals for the Tenth Circuit has stated: "Courts have consistently interpreted Fed. R. Crim. P. 17(a) to permit the issuance of subpoenas only to compel attendance at formal proceedings such as hearings and trials." United States v. Villa-Chaparro, 115 F.3d at 804.

In Vigil, the defendant requested that production from an ex parte rule 17(c) subpoena duces tecum occur at her counsel's office. See Vigil, 2013 WL 3270995, at *21. The Court denied this request, holding that the "Tenth Circuit has stated that such a practice is not permissible." Vigil, 2013 WL 3270995, at *21 (citing United States v. Villa-Chaparro, 115 F.3d at 804 ("Courts have consistently interpreted Fed. R. Crim. P. 17(a) to permit the issuance of subpoenas only to compel attendance at formal proceedings such as hearings and trials.")). The Court thus required production at the Court, and permitted the "parties and their attorneys to inspect all or part of the produced evidence." Vigil, 2013 WL 3270995, at *21.

## ANALYSIS

The Court concludes that rule 17(c)(3) permitted Begay to seek a subpoena duces tecum ex parte, the subpoena complied with Nixon's requirements, and the United States was not entitled to notice of the subpoena. Further, Davis was entitled to notice of the subpoena under rule 17(c), because exceptional circumstances did not exist. Finally, the Court should have ordered production at the Court rather than Begay's counsel's office, as per the Court's decision in Vigil, 2013 WL 3270995, at *21. Accordingly, the Court grants in part and denies in part the Motion, and denies the Emergency Motion as moot.

## I.     RULE 17(C)(3) PERMITTED BEGAY TO SEEK EX PARTE A SUBPOENA DUCES TECUM.

The Court has concluded that "rule 17(c) permits ex parte proceedings under the same

circumstances as rule 17(b) would permit." <u>Vigil</u>, 2013 WL 3270995, at *16. As Judge Larimer of the United States District Court for the Western District of New York in <u>United States v. Florack</u> held, rule 17's structure is such that there is a fair construction that rule 17(c) also permits ex parte proceedings as opposed to only rule 17(b) allowing ex parte proceedings:

> The language of Rule 17(c) suggests this result. In pertinent part, the first sentence of that section reads as follows: "A subpoena may <u>also</u> command the person to whom it is directed to produce the books, papers, documents . . . ." (emphasis added). The word "also" suggests that the subpoena described above, that is in Rule 17(a) and Rule 17(b), in addition to requiring the person to attend, may also require that person to produce books, records, and documents. Therefore, Rule 17(c) should be interpreted in accordance with the provisions of Rule 17(a) and (b).

> Rule 17(a) describes the process for obtaining all types of subpoenas by those who are able to pay for them. Rule 17(b) describes the process for obtaining all subpoenas by those unable to pay the requisite fees. Rule 17(c) describes special matters concerning a subpoena duces tecum, for example, it provides a means to quash the subpoena and it authorizes the issuing court discretion to direct that the subpoenaed documents be produced in advance of trial and made available to both sides for inspection. It is, of course, true that Rule 17(c) does not specifically discuss a process for obtaining such subpoenas by an ex parte application. It is also true, however, that the section does not describe any process for obtaining the subpoena. Nothing in Rule 17(c) suggests that the initial application should be any different from the application for a subpoena which does not happen to require that the subpoenaed witness produce documents.

838 F. Supp. at 79 (citations omitted). The United States Court of Appeals for the Eighth Circuit followed the district court in <u>United States v. Florack</u>. <u>See</u> <u>United States v. Hang</u>, 75 F.3d 1275, 1282 (8th Cir. 1996)("We are persuaded by the well-reasoned analysis in <u>Florack</u>. That court focused upon the wording of Rule 17(c), emphasizing language which provides that a subpoena may 'also' require a person to produce documents.").

Although <u>Vigil</u> held that "rule 17(c) permits ex parte proceedings under the same circumstances as rule 17(b) would permit," <u>Vigil</u>, 2013 WL 3270995, at *16, that case expounded on rule 17(c)(1), not 17(c)(3). Unlike rule 17(c)(1) -- and rule 17(a) for that matter --

rule 17(c)(3) expressly requires a court order to serve "a subpoena requiring the production of personal or confidential information about a victim" on a third party. That court-order requirement is an explicit departure from the general rule that subpoenas do not require the Court's involvement.[5] Rule 17(c)(3) also departs from the general rule that, in a criminal case, a defendant does not need to notify anyone, much less a non-party, about a subpoena duces tecum, compare Fed. R. Crim. P. 17(c)(1)("A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates."), with Fed. R. Civ. P. 45(a)(4)("If the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party."), because, "unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object," before entering an order under rule 17(c)(3), Fed. R. Crim. P. 17(c)(3). Rule 17(c)(3) is silent regarding whether the Court should determine whether exceptional circumstances exist ex parte or in an adversarial proceeding, so the rule leaves that determination to the Court. See Fed. R. Crim. P. 17(c) advisory committee note to 2008 amend. ("The Committee leaves to the judgment of the court a determination as to whether the judge will permit the question whether such exceptional circumstances exist to be decided ex parte and authorize service of the third-party subpoena without notice to anyone."). See also id. (indicating that, after releasing a draft of the amendment for public comment, the advisory committee removed "language providing for ex parte issuance of a court order authorizing a subpoena to a third party for private or confidential information about a victim").

---

[5]The Court notes that indigent defendants always need a court order to get a subpoena. See Fed. R. Crim. P. 17(b). Because most criminal defendants are indigent, most criminal defendants do need a court order as a matter of fact.

Generally, ex parte proceedings are disfavored in our legal system. "We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive." Taylor v. Illinois, 484 U.S. 400, 408-09 (1988). "The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts." Taylor v. Illinois, 484 U.S. at 409. The Court thus concludes that it needs good reason to entertain a rule 17(c)(3) motion ex parte.

Here, the Court properly allowed the rule 17(c)(3) motion ex parte, because sound reasons existed to do so. Begay requested the subpoena, and the Court granted it, because, an important aspect of the case is whether the alleged criminal conduct occurred when Begay was a minor or an adult, which could substantially alter the sentence that Begay may receive if convicted. See Ex Parte Motion at 1. According to Begay, both he and Davis made statements that referenced events around the school year, "which would place the incident in time." Ex Parte Motion at 1. Begay thus requested the school records because they might have helped determine when the alleged criminal conduct occurred. See Ex Parte Motion at 1. These reasons are adequate to grant the subpoena, and they are sound reasons for the Court to allow the motion to proceed in a disfavored ex parte proceeding. An indigent defendant should not be required to disclose attorney-client communications to the prosecution. This may be his only defense. He is not required to disclose trial strategy. Indeed, most of these subpoenas are sought ex parte. The Court therefore concludes that rule 17(c)(3) permitted Begay to seek ex parte a subpoena duces tecum, and, perhaps important, permitted the Court to consider it ex parte.

## II.    THE SUBPOENA COMPLIED WITH NIXON'S REQUIREMENTS.

The Court concludes that Begay's subpoena complied with Nixon's requirements.

Under <u>Nixon</u>,

> to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

418 U.S. at 699-700 (footnote omitted). "Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." <u>Nixon</u>, 418 U.S. at 701.

Here, the documents subpoenaed are "evidentiary and relevant," because they may have indicated whether Begay was a minor or an adult when the alleged crime occurred. <u>See</u> Ex Parte Motion at 1. Nor were the school records "procurable reasonably in advance of trial by exercise of due diligence." <u>Nixon</u>, 418 U.S. at 699. Under federal regulations associated with FERPA, 20 U.S.C. § 1232(g), a "parent or eligible student shall provide a signed and dated written consent before an educational agency or institution discloses personally identifiable information from the student's education records." 34 C.F.R. § 99.30. Absent this consent, an educational institution cannot release personally identifiable student information unless an exception applies. <u>See</u> 34 C.F.R. § 99.31. One such exception is "to comply with a judicial order or lawfully issued subpoena." 34 C.F.R. § 99.31(a)(9)(i). The Court thus concludes that the school records were not "procurable reasonably in advance of trial by exercise of due diligence," <u>Nixon</u>, 418 U.S. at 699, because Davis' parents "will not authorize release of these records," Ex Parte Motion at 3, and because the school district would not have released Davis' school records without the rule 17(c) subpoena.

Further, without the school records, Begay could not "properly prepare for trial," and the "failure to obtain such inspection may tend unreasonably to delay the trial." <u>Nixon</u>, 418 U.S. at

699.  In the Ex Parte Motion, Begay explains that an important aspect of the case is whether the alleged criminal conduct occurred when Begay was a minor or an adult.[6]  See Ex Parte Motion at 1.  According to Begay, both he and Davis made statements that referenced events around the school year, "which would place the incident in time."  Ex Parte Motion at 1.  Because the school records plausibly could have yielded more information regarding when the alleged crime occurred, Begay could not "properly prepare for trial" without them.  Nixon, 418 U.S. at 699.  Further, if the school records contained new information regarding Begay's age at the time the alleged crime occurred, and Begay did not learn of that information before trial, Begay might have to alter key aspects of his defense, which "may tend unreasonably to delay the trial."  Nixon, 418 U.S. at 699.  Such a situation might "result in a situation where the Court would have to continue" the trial.  Vigil, 2013 WL 3270995, at *20.

The Court further holds that the Ex Parte Motion was "made in good faith and [was] not intended as a general 'fishing expedition.'"  Nixon, 418 U.S. at 700.  The subpoena was targeted to secure the necessary information and not much more.  Nothing in the Ex Parte Motion suggests that it was not made in good faith.  As for allegations of a "fishing expedition," the Ex Parte Motion requests "school records (including attendance, academic, discipline, and medical . . . for [the victim's] fourth-fifth grade and related records in 2004-2006."  Ex Parte Motion at 2.  At the hearing, the Court asked Begay if the second paragraph of his motion, which states that a

---

[6]In the Ex Parte Motion, Begay does not cite specific authority as to why Begay's age at the time of the crime is significant, although the Court assumes that Begay refers to 18 U.S.C. § 5031, which states:

> [A] "juvenile" is a person who has not attained his eighteenth birthday, or for the purpose of proceedings and disposition under this chapter for an alleged act of juvenile delinquency, a person who has not attained his twenty-first birthday, and "juvenile delinquency" is the violation of a law of the United States committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult or a violation by such a person of section 922(x).

key question in this case is whether Begay was a minor or an adult at the time of the alleged crime, Ex Parte Motion at 1, is "the big reason that you requested these documents." Tr. at 6:2-3 (Court). Begay replied: "Yes." Tr. at 6:4 (Samore). In other words, Begay requested the documents, because he thought they may determine whether Begay was a minor or an adult at the time of the alleged crime, and not because he intended a "fishing expedition." With no reason to doubt counsel's word, the Court concludes that the Ex Parte Motion was not "intended as a general 'fishing expedition.'" <u>Nixon</u>, 418 U.S. at 700.

Finally, the Court notes that the Ex Parte Motion says that the records "may be admissible as evidence [of] impeachment." Ex Parte Motion at 3. Although <u>Nixon</u> holds that, "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial," <u>Nixon</u>, 418 U.S. at 701, that the school records have possible impeachment utility is not the primary reason that Begay requested them. <u>See</u> Tr. at 6:2-4 (Court, Samore). Nor was impeachment utility the reason that the Court authorized the subpoena. <u>See</u> Tr. at 6:5-7 (Court). For these reasons, the Court concludes that the subpoena duces tecum complied with <u>Nixon</u>'s requirements.

## III. THE UNITED STATES WAS NOT ENTITLED TO NOTICE OF THE <u>SUBPOENA.</u>

The United States was not entitled to notice of the subpoena. The Court concluded in <u>Vigil</u> that "rule 17(c) does not require notice to the opposing party," <u>Vigil</u>, 2013 WL 3270995, at *9, but that referred to rule 17(c)(1), not rule 17(c)(3). Under rule 17(c)(3), unlike rule 17(c)(1), "a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order." Fed. R. Crim. P. 17(c)(3). "A party applying to the court for an order must do so by motion." Fed R. Crim. P. 47(a). "A party must serve a written motion -- <u>other than one that the court may hear ex parte</u> -- and any hearing notice" on

the other parties.  Fed R. Crim. P. 47(c)(emphasis added).  Because the Court concludes above

that the rule 17(c)(3) exceptional circumstances determination properly proceeded ex parte, the

United States was not entitled to notice of the subpoena.

## IV.    DAVIS WAS ENTITLED TO NOTICE OF THE SUBPOENA UNDER RULE 17(C).

The Court concludes that it should have required giving notice to Davis so that she could

move to quash or to modify the subpoena or otherwise object.[7]  Rule 17(c)(3) states:

> After a complaint, indictment, or information is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order.  Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object.

Fed. R. Crim. P. 17(c)(3).  In other words, a court may authorize a subpoena to retrieve

confidential information about a victim from a third party, but the Court must notify the victim

before doing so unless exceptional circumstances exist.  The advisory committee explains that:

> Such exceptional circumstances would include, evidence that might be lost or destroyed if the subpoena were delayed or a situation where the defense would be unfairly prejudiced by premature disclosure of a sensitive defense strategy.  The Committee leaves to the judgment of the court a determination as to whether the judge will permit the question whether such exceptional circumstances exist to be decided ex parte and authorize service of the third-party subpoena without notice to anyone.

Fed. R. Crim. P. 17(c)(3) advisory committee's note to 2008 amendment.

_____

[7]At the hearing, the Court stated that Davis was not entitled to notice because exceptional circumstances existed.  See Tr. at 14:20-25 (Court).  After further review, however, the Court concludes that exceptional circumstances did not exist, and Davis was entitled to notice under rule 17(c).  While the Court is reluctant to force indigent Defendants to disclose trial strategy to the United States to get a subpoena duces tecum, it cannot ignore the Congressional directive that exceptional circumstances must exist to waive notice to the victim.  If the Court waived notice to the victim here because it might disclose some trial strategy -- the only reason that the Court sees in the record or in the Ex Parte Motion -- it would be waiving notice in almost every case.  Congress does not want notice to the victim to be waived except in the rare case.  Also, notifying a victim discloses work product less -- and perhaps a lot less -- than a public hearing involving the United States.

Here, the Court sees no exceptional circumstances that would prevent victim notification. The only possible allegations of exceptional circumstances in the Ex Parte Motion are the following:

> The Defense has a high need for confidentiality regarding disclosure of these records, due to the nature of the Defense, the secretiveness of the Native community, the common fears that many members of that community have of federal law enforcement authorities, and the likelihood that such records would be lost or altered.

Ex Parte Motion at 3. These allegations are conclusory. Without factual support for these allegations, the Court cannot construe them as demonstrating exceptional circumstances that displace Davis' right to be notified that Begay accessed her confidential records.

Another possible exceptional circumstance is the existence of victim notification under FERPA regulations. See Tr. at 14:22-25 (Court); Response at 2. The Court concludes, however, that a FERPA notification is unrelated to rule 17(c)'s exceptional circumstances analysis and that conflating a FERPA notification with a rule 17(c) notification would defeat rule 17(c)'s purpose.

Rule 17(c)'s victim notification requirement exists "so that the victim can move to quash or modify the subpoena or otherwise object." Fed. R. Crim. P. 17(c)(3). The Court therefore must notify the victim before "[b]efore entering the order and unless there are exceptional circumstances." Fed. R. Crim. P. 17(c)(3)(emphasis added). In contrast, victim notification under FERPA regulations occurs after the Court has authorized a subpoena and the school receives it, that is, after the victim has an opportunity to object to the subpoena. See 34 C.F.R. § 99.31(a)(9)(i)(stating that a school may release confidential student information "to comply with a judicial order or lawfully issued subpoena"). If the Court held that a FERPA notification adequately substituted for a rule 17(c) notification, it would defeat the purpose of rule 17(c)'s notification, which is to give the victim an opportunity to object to the subpoena before the Court

authorizes it.  The Court therefore concludes that the existence of a FERPA notification does not present exceptional circumstances.  The Court thus should have notified Davis before authorizing Begay's subpoena.

## V.    THE COURT SHOULD HAVE ORDERED PRODUCTION AT THE COURT RATHER THAN BEGAY'S COUNSEL'S OFFICE.

The Court should have ordered production at the courthouse.  In <u>Vigil</u>, the defendant requested that production from an ex parte rule 17(c) subpoena duces tecum occur at her counsel's office.  <u>See</u> <u>Vigil</u>, 2013 WL 3270995, at *21.  The Court denied this request, holding that the "Tenth Circuit has stated that such a practice is not permissible."  <u>Vigil</u>, 2013 WL 3270995, at *21 (citing <u>United States v. Villa-Chaparro</u>, 115 F.3d at 804 ("Courts have consistently interpreted Fed. R. Crim. P. 17(a) to permit the issuance of subpoenas only to compel attendance at formal proceedings such as hearings and trials.")).  The Court thus required production at the Court, and permitted the "parties and their attorneys to inspect all or part of the produced evidence."  <u>Vigil</u>, 2013 WL 3270995, at *21.

Here, the Court should have followed <u>Vigil</u> and ordered production at the courthouse rather than Begay's counsel's office.  Because of this oversight, and because Davis was not notified of the subpoena pursuant to rule 17(c), the Court will order that the parties delete all electronic versions of the school records and surrender all hard copies to the Court.  The Court concludes that this procedure is "an appropriate resolution for the time being while the case is pending, so the defendant will not have copies."  Tr. at 14:12-14 (Court).  After this case concludes, the Court will destroy the school records, so the parties may inform Davis that the Court will not keep the records forever.  <u>See</u> Tr. at 14:7-11 (Court).

The Court will also deny the Emergency Motion as moot, because the Emergency Motion requests only "an emergency protective order until the Motion . . . is resolved."  Emergency

Motion at 1.  Because the Motion is now resolved, the Emergency Motion is moot.

**IT IS ORDERED** that: (i) the United States' Sealed Motion to Remedy Rule 17 Violation, filed January 22, 2016 (Doc. 82) is granted in part and denied in part; (ii) the United States' Sealed Emergency Motion for Protective Order, filed January 22, 2016 (Doc. 83) is denied as moot; and (iii) the Sealed Ex Parte Motion Authorizing Rule 17(c) Subpoena, filed November 1, 2015 (Doc. 74), and the Sealed Ex Parte Order Authorizing Rule 17(c) Subpoena, filed November 6, 2015 (Doc. 75), shall be unsealed.  All parties shall surrender all hard copies of the school records to the Court and delete all electronic versions of the school records.  The Court will keep the school records until this case concludes and then destroy them.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Damon P. Martinez
  United States Attorney
Kyle T. Nayback
Novaline Wilson
Michael D. Murphy
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

John F. Samore
Albuquerque, New Mexico

    *Attorney for the Defendant*