**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                                                                          No. CR 14-0747 JB

LYLE WOODY BEGAY,

     Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on: (i) the Sentencing Memorandum for Defendant Lyle Woody Begay and Formal Objection to Presentence Investigation Report, filed July 1, 2021 (Doc. 274)("Sentencing Objection"); and (ii) the Correction to Sentencing Memorandum for Defendant Begay and Formal Objections to the Presentence Investigation Report, filed July 9, 2021 (Doc. 275)("Correction to Sentencing Objection"). The primary issues are: (i) whether the Presentence Investigation Report, filed February 4, 2021 (Doc. 259)("PSR"), improperly mentions Defendant Begay's conduct with regard to Jane Doe 1, when he has pled guilty only to conduct with regard to Jane Doe 2; and (ii) whether Begay is a repeat and dangerous sex offender against minors, based on his conduct with regard to Jane Doe 1, to justify a 5-level sentencing enhancement pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 4B1.5(b)(1). The Court concludes that: (i) Begay's conduct with regard to Jane Doe 1 is relevant conduct, and thus, the PSR properly includes this conduct; and (ii) U.S.S.G. § 4B1.5(b)(1)'s 5-level sentencing enhancement is proper based on Begay's conduct with regard to Jane Doe 1. Consequently, the Court overrules the Sentencing Objection.

## FACTUAL BACKGROUND

On May 24, 2013, Jane Doe 2 disclosed to her parents that she experienced sexual abuse from Begay, after her sister, Jane Doe 1, also disclosed Begay's sexual abuse of her.  See PSR ¶ 11, at 5.  On June 21, 2013, Jane Doe 2 reported to a child forensic professional at the Federal Bureau of Investigations ("FBI") that Begay touched her inappropriately while she was sleeping at her grandmother's house during spring break.  See PSR ¶ 13, at 5.  Jane Doe 2 recalled:

> The defendant and Jane Doe 2 were sleeping together in his room on the bottom bunk bed. The defendant was positioned behind Jane Doe 2 as she slept on her side in the bed. Jane Doe 2 woke up to the defendant touching her buttocks with his hand while he was attempting to remove her pants.  Jane Doe [2] recalled she felt the defendant's finger by her buttocks when he was trying to remove her pants. Jane Doe 2 moved, covered herself with blankets and looked at the defendant who pretended to be sleeping.

PSR ¶ 13, at 5.  "Jane Doe 2 reported this happened more than once where the defendant would put his hand under her underwear and make skin to skin contact with her buttocks," PSR ¶ 14, at 5, and this happened multiple times when Jane Doe 2 was seven and eight years old, see PSR ¶ 15, at 6.  "[T]he defendant admitted to having sexual contact with Jane Doe 2 on multiple occasions" when Jane Doe 2 was seven to nine years old.  PSR ¶ 18, at 6.

## PROCEDURAL BACKGROUND

On March 11, 2014, a Grand Jury charged Begay with three counts of sexually abusing Jane Doe 1, in violation of 18 U.S.C. §§ 1153, 2244(a)(5), and 2246(3), and one count of sexually abusing Jane Doe 2, in violation of 18 U.S.C. §§ 1153, 2244(a)(5), and 2246(3).  See Indictment at 1-3, filed March 11,2014 (Doc. 1).  On October 9, 2020, Begay pled guilty to knowingly engaging in or causing sexual contact with Jane Doe 2 while Jane Doe 2 was under 12 years old.  See Plea Agreement ¶ 9, at 4, filed October 9, 2020 (Doc. 257).  Begay did not plead guilty to any offenses involving Jane Doe 1.  See Plea Agreement ¶¶ 8-9, at 3-5.  After Begay pled guilty, the

United States Probation Office ("USPO") prepared the PSR.  PSR at 1.  The PSR includes a heading titled "Offense Behavior Not Part of Relevant Conduct" that details Begay's sexual abuse of Jane Doe 1.  PSR ¶¶ 42-48, at 9-10.  The PSR states:

> When Jane Doe 1 was in kindergarten, the defendant came into the bathroom with her and made her bend down over the toilet, so her hands were on the toilet seat. The defendant then pulled down Jane Doe 1's pants and tried to put his penis in her vagina. Jane Doe 1 felt the pressure of his penis on her vagina. . . .  On another occasion, the defendant took off Jane Doe 1's clothing and used cucumber melon scented lotion to lubricate his penis. The defendant penetrated Jane Doe 1's vagina with his penis. During September 2004, the defendant entered Jane Doe 1's bedroom, closed the door, closed the curtain, and pulled down Jane Doe 1's shorts and pulled down his pants. Jane Doe 1's shorts were pulled to her ankles and the defendant bent her over the bed and held her down and penetrated her vagina with his penis.  Jane Doe 1 recalled the defendant's body going back and forth and when she asked to go to the bathroom, the defendant would not let her go. The defendant grunted, ejaculated, and left the bedroom to go across the hall to the bathroom to clean himself. . . .  Jane Doe also recalled during Christmas time (year unspecified), she woke to find the defendant touching her vagina.  On another occasion, the defendant came into Jane Doe 1's bedroom and sat on the bed and touched Jane Doe 1's leg. The defendant slid his hand over Jane Doe 1's vagina and applied pressure and pressed his two smaller fingers over her underwear into her vagina.

PSR ¶ 44, at 9.  Accordingly, the PSR recommends a 5-level sentencing enhancement pursuant to U.S.S.G. § 4B1.5(b)(1), because "the defendant engaged in a pattern of activity involving prohibited sexual conduct.  Therefore, the defendant is a repeat and dangerous sex offender against minors."  PSR ¶ 38, at 8.

    In his Sentencing Objection, Begay "formally objects to all the allegations set forth regarding Jane Doe 1 in paragraphs 42, 43, 44, 45, 46, and 47 of the PSR," because "there is no reference to Jane Doe 1" in the written plea agreement.  Sentencing Objection at 2-3.  Begay also objects to the 5-level sentencing enhancement pursuant to U.S.S.G. § 4B1.5(b)(1), because he assumes that the USPO improperly relied on the facts regarding Jane Doe 1 to justify the

enhancement.  See Sentencing Objection at 3.[1]  The United States responds.  See United States'

Sealed Response to Defendant's Sentencing Memorandum and Formal Objection to the

Presentence Investigation Report (Docs. 274, 275)("Response").  The United States contends that

Begay's "conduct involving Jane Doe 1 should be considered under U.S.S.G. § 1B1.3 as relevant

conduct."  Response at 1.  Further, the United States argues that, because Begay "admitted to

having sexual contact with Jane Doe 2," this admission in itself "shows a pattern of activity

involving prohibited sexual conduct with a minor" sufficient to justify the § 4B1.5(b)(1)

enhancement.  Response at 1.  Finally, "[t]he United States also asserts that consideration of the

conduct involving Jane Doe 1 is also a basis for application of the five-level enhancement under

U.S.S.G. § 4B1.1 because Defendant is a repeat and dangerous sex offender against minors."

Response at 1.

## LAW REGARDING RELEVANT CONDUCT FOR SENTENCING

In calculating an appropriate sentence, the Guidelines consider a defendant's "offense of

conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning

is specified or is otherwise clear from the context."  U.S.S.G. § 1B1.1, n.1(H).  In United States v.

Booker, 543 U.S. 220 (2005), the Supreme Court of the United States of America notes:

> Congress' basic statutory goal -- a system that diminishes sentencing
> disparity -- depends for its success upon judicial efforts to determine, and to base
> punishment upon, the *real conduct* that underlies the crime of conviction.  That
> determination is particularly important in the federal system where crimes defined
> as, for example, "obstruct[ing], delay[ing], or affect[ing] commerce or the
> movement of any article or commodity in commerce, by . . . extortion," . . . can
> encompass a vast range of very different kinds of underlying conduct.

---

[1]In the Sentencing Objection, Begay objects to the sentencing enhancement "set forth in paragraph 39 of the PSR."  Sentencing Objection at 3.  In the Correction to Sentencing Objection, Begay states that he objects to the sentencing enhancement "set forth in paragraph 38 of the PSR." Correction to Sentencing Objection at 1.

543 U.S. at 250-51 (emphasis in original)(quoting 18 U.S.C. § 1951(a)). The Supreme Court's reasoning in United States v. Booker suggests that the consideration of real conduct is necessary to effectuate Congress' purpose in enacting the Guidelines.

Section 1B1.3(a) provides that the base offense level under the Guidelines "shall be determined" based on the following:

> (1)
>
> (A)     all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
> (B)     in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;
>
> (2)     solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;
>
> (3)     all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and
>
> (4)     any other information specified in the applicable guideline.

U.S.S.G. § 1B1.3(a)(1)-(4).   The Guidelines "allow courts to consider conduct which is not formally charged or is not an element of the offense of conviction." United States v. Tagore, 158 F.3d 1124, 1128 (10th Cir. 1998).  Conduct is relevant when it is "the same type of conduct" or part of "the same scheme or plan" as the conviction offenses. United States v. Custodio, 39 F.3d 1121, 1126 (10th Cir. 1994).  The conduct that a sentencing court may consider, therefore,

"comprises more, often much more, than the offense of conviction itself, and may include uncharged and even acquitted conduct."  United States v. Allen, 488 F.3d 1244, 1254-55 (10th Cir. 2007).  "Section 1B1.3 embodies the principle that the sentence should reflect the offense's seriousness, and so courts should consider all conduct relevant to determining that seriousness." United States v. Nissen, 492 F. Supp. 3d 1254, 1272 (D.N.M. 2020)(Browning, J.)(citing United States v. Allen, 488 F.3d at 1255).

Pursuant to U.S.S.G. § 6A1.3's commentary, evidentiary standards lower than beyond a reasonable doubt are permitted to show relevant conduct.  See U.S.S.G. § 6A1.3.  The court may rely upon reliable hearsay, so long as the evidence meets the preponderance-of-the-evidence standard.  See United States v. Vigil, 476 F. Supp. 2d 1231, 1245 (D.N.M. 2007)(Browning, J.), aff'd, 523 F.3d 1258 (10th Cir. 2008).  Accord United States v. Schmidt, 353 F. App'x. 132, 135 (10th Cir. 2009)(unpublished)[2]("The district court's determination of 'relevant conduct' is a factual finding subject to a preponderance of the evidence standard, and clear error review.").  The evidence and information upon which the court relies, however, must have sufficient indicia of reliability.  See U.S.S.G. § 6A1.3 ("In resolving any dispute concerning a factor important to the

---

[2]United States v. Schmidt is an unpublished opinion, but the Court can rely on an unpublished United States Court of Appeals for the Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that United States v. Schmidt has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.").

Supreme Court precedent on relevant conduct consists primarily of two cases: Witte v. United States, 515 U.S. 389 (1995), and United States v. Watts, 519 U.S. 148 (1997). In Witte v. United States, the Supreme Court upheld the use of uncharged conduct at sentencing against a double-jeopardy challenge. See 515 U.S. at 404-06. The defendant in Witte v. United States had been involved in an unsuccessful attempt to import marijuana and cocaine into the United States in 1990, and in an attempt to import marijuana in 1991. See 515 U.S. at 392-93. In March 1991, a federal grand jury indicted the defendant for attempting to possess marijuana with intent to distribute in association with the defendant's latter attempt to import narcotics. See Witte v. United States, 515 U.S. at 392-93. At sentencing, the district court concluded that, because the 1990 attempt was part of the continuing conspiracy, it was relevant conduct under U.S.S.G. § 1B1.3, and thus calculated the defendant's base offense level based on the aggregate amount of drugs involved in both the 1990 and 1991 episodes. See Witte v. United States, 515 U.S. at 394.

In September, 1992, a second federal grand jury indicted the defendant for conspiring and attempting to import cocaine in association with his activities in 1990. See Witte v. United States, 515 U.S. at 392-93. The defendant moved to dismiss the indictment, contending that he had already been punished for the cocaine offenses, because the court had considered those offenses relevant conduct at the sentencing for the 1991 marijuana offense. See Witte v. United States, 515 U.S. at 395. The district court agreed and dismissed the indictment, holding that punishment for the cocaine offenses would violate the prohibition against multiple punishments in the Double Jeopardy Clause of the Fifth Amendment to the Constitution. See Witte v. United States, 515 U.S.

at 395.  The United States Court of Appeals for the Fifth Circuit reversed and held that "the use of relevant conduct to increase the punishment of a charged offense does not punish the offender for the relevant conduct."  United States v. Witte, 25 F.3d 250, 258 (5th Cir. 1994).  In reaching this holding, the Fifth Circuit acknowledged that its conclusion was contrary to other United States Courts of Appeals opinions, including a United States Court of Appeals for the Tenth Circuit opinion, that had previously considered this question.  See United States v. Witte, 25 F.3d at 255 n.19 (citing United States v. Koonce, 945 F.2d 1145 (10th Cir. 1991)).

The Supreme Court granted certiorari to resolve the conflict between the Courts of Appeals and affirmed the Fifth Circuit decision.  See United States v. Witte, 515 U.S. at 395.  In holding that a district court's consideration of the defendant's relevant conduct did not punish the defendant for that conduct, the Supreme Court concluded that "consideration of information about the defendant's character and conduct at sentencing does not result in 'punishment' for any offense other than the one of which the defendant was convicted."  See United States v. Witte, 515 U.S. at 401.  The Supreme Court reasoned that sentencing courts had always considered relevant conduct and "the fact that the sentencing process has become more transparent under the Guidelines . . . does not mean that the defendant is now being punished for uncharged relevant conduct as though it were a distinct criminal offense."  See United States v. Witte, 515 U.S. at 402.  Sentencing enhancements do not punish a defendant for uncharged offenses; rather, they reflect Congress' policy judgment "that a particular offense should receive a more serious sentence within the authorized range if it was either accompanied by or preceded by additional criminal activity."  See United States v. Witte, 515 U.S. at 403.

In United States v. Watts, the Supreme Court, in a per curiam opinion, relied upon Witte v. United States and upheld, against a double-jeopardy challenge, a sentencing judge's use of

- 8 -

conduct for which the defendant had been acquitted.  See United States v. Watts, 519 U.S. at 149.

The Supreme Court noted that its conclusion was in accord with every United States Court of

Appeals -- other than the Court of Appeals for the Ninth Circuit -- and that each had previously

held that a sentencing court may consider conduct for which the defendant had been acquitted, if

the government establishes that conduct by a preponderance of the evidence.  See United States v.

Watts, 519 U.S. at 149 (citing, e.g., United States v. Coleman, 947 F.2d 1424, 1428-29 (10th Cir.

1991)).  The Supreme Court began its analysis with 18 U.S.C. § 3661: "No limitation shall be

placed on the information concerning the background, character, and conduct of a person convicted

of an offense which a court of the United States may receive and consider for the purpose of

imposing an appropriate sentence."  United States v. Watts, 519 U.S. at 151 (quoting 18 U.S.C. §

3661).  According to the Supreme Court, 18 U.S.C. § 3661 embodies the codification of "the

longstanding principle that sentencing courts have broad discretion to consider various kinds of

information" and that "the Guidelines did not alter this aspect of the sentencing court's discretion."

United States v. Watts, 519 U.S. at 151-52.

     Tenth Circuit caselaw adheres closely to the Supreme Court's results in Witte v. United

States and United States v. Watts.  See United States v. Andrews, 447 F.3d 806, 810 (10th Cir.

2006)(applying Witte v. United States' holding to affirm that a career-offender enhancement does

not violate the Fifth Amendment's Double Jeopardy Clause).  In United States v. Banda, 168 F.

App'x. 284 (10th Cir. 2006)(unpublished), the Tenth Circuit rejected a defendant's argument that

it was "structural error" for a district court to find sentencing factors "by a preponderance of the

evidence rather than the jury applying a beyond-a-reasonable-doubt standard."  168 F. App'x. at

290.  The Tenth Circuit explained that "'[i]t is now universally accepted that judge-found facts by

themselves do not violate the Sixth Amendment.  Instead, the constitutional error was the court's

reliance on judge-found facts to enhance the defendant's sentence mandatorily.'" United States v. Banda, 168 F. App'x. at 290 (quoting United States v. Lauder, 409 F.3d 1254, 1269 (10th Cir. 2005)).

In United States v. Coleman, the defendant appealed the district court's sentence enhancement for firearms possession after he was convicted of conspiracy to possess and possession of a controlled substance with intent to distribute but was acquitted of using or carrying a firearm during and in relation to a drug trafficking crime. See 947 F.2d at 1428. The Tenth Circuit acknowledged that courts had taken various positions on whether a sentence may be enhanced for firearms possession despite a defendant's acquittal on firearms charges. See United States v. Coleman, 947 F.2d at 1428-29 (citing United States v. Duncan, 918 F.2d 647, 652 (6th Cir. 1990)("[A]n acquittal on a firearms carrying charge leaves ample room for a district court to find by the preponderance of the evidence that the weapon was possessed during the drug offense."); United States v. Rodriguez, 741 F. Supp. 12, 13-14 (D.D.C. 1990)(Green, J.)(refusing to apply 2-level enhancement for firearms possession, because "[t]o add at least 27 months to the sentence for a charge of which the defendant was found not guilty violates the constitutional principle of due process and the ban against double jeopardy")). Without discussion related to the standard of proof a sentencing court should use to make factual findings, the Tenth Circuit held that the district court did not err in enhancing the defendant's sentence for possession of a firearm. See United States v. Coleman, 947 F.2d at 1429. The Tenth Circuit based its conclusion on evidence that: (i) individuals at the arrest scene handled the weapons at will; (ii) the weapons were handled at will by individuals who lived at the house; and (iii) the weapons were kept for the protection of conspiracy participants and the narcotics involved. See United States v. Coleman, 947 F.2d at 1429. The Tenth Circuit summarized that, in reviewing relevant federal case law, it

found "persuasive the decisions that have allowed a sentencing court to consider trial evidence that was applicable to a charge upon which the defendant was acquitted."  947 F.2d at 1429.

In United States v. Washington, 11 F.3d at 1510, the defendant argued that the United States needed to prove drug quantities used as relevant conduct to establish a defendant's offense level by clear-and-convincing evidence, rather than by a preponderance of the evidence.  See 11 F.3d at 1512.  The defendant objected to his sentencing, because the drug quantity that the district court considered as relevant conduct, and which the court found by a preponderance of the evidence, increased his Guidelines sentencing range from 210-262 months to life in prison.  See United States v. Washington, 11 F.3d at 1515.  The defendant argued "that because the additional drug quantities effectively resulted in a life sentence a higher standard of proof should be required." United States v. Washington, 11 F.3d at 1515.  Although the Tenth Circuit in United States v. Washington "recognize[d] the strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof," it held that "the Due Process Clause does not require sentencing facts in the ordinary case to be proved by more than a preponderance standard." 11 F.3d at 1516 (citing McMillan v. Pennsylvania, 477 U.S. 79, 84 (1986)).  See United States v. Sangiovanni, No. CR 10-3239 JB, 2014 WL 4347131, at *22-26 (D.N.M. Aug. 29, 2014)(concluding that a sentencing court can cross reference from the Guidelines that correspond to the defendant's crime of conviction to the Guidelines for another, more harshly punished crime, if it can be established by a preponderance of the evidence that the defendant committed the more serious crime); United States v. Cervantes-Chavez, 59 F. Supp. 3d 1295, 1319 (D.N.M. 2014)(Browning, J.)(cross-referencing from the guideline for being an illegal alien in possession of a firearm to the drug-possession guideline after finding by a preponderance of the evidence that the defendant committed a drug-possession crime).

The Court has held previously that it may consider a defendant's refusal to answer questions for the PSR, while not drawing an adverse inference from the refusal. See United States v. Goree, No. CR 11-0285 JB, 2012 WL 592869, at *11 (D.N.M. Feb. 13, 2012)(Browning, J.). The Court has also held that, although it can consider a defendant's silence about information regarding herself or others engaging in criminal conduct, it will not rely on that silence to increase the defendant's sentence. See United States v. Chapman, No. CR 11-0904 JB, 2012 WL 2574814, at *13 n.5 (D.N.M. June 22, 2012)(Browning, J.). Finally, the Court has held that a defendant's "aggression towards other individuals, and the murder he may have attempted to orchestrate while incarcerated" is relevant information which the Court can consider in fashioning a proper sentence. United States v. Romero, No. CR 09-1253 JB, 2012 WL 6632493, at *23 (D.N.M. Dec. 6, 2012)(Browning, J.). See United States v. Tapia, No. CR 12-3012 JB, 2017 WL 6417610, at *10-15 (D.N.M. Dec. 14, 2017)(Browning, J.).

## ANALYSIS

Here, the Court concludes that Begay's conduct with regard to Jane Doe 1 is "relevant conduct" that the Court may consider in determining Begay's sentence. First, the Court concludes that Begay's sexual abuse of Jane Doe 1 is relevant, because it is "the same type of conduct" or part of "the same scheme or plan," as the conviction offenses. United States v. Custodio, 39 F.3d at 1126. Begay pled guilty to knowingly engaging in sexual contact with Jane Doe 2 while Jane Doe 2 was under 12 years old. See Plea Agreement ¶¶ 8-9, at 3-5. Begay's conduct with Jane Doe 1 -- who is Jane Doe 2's older sister and who is also related to Begay -- occurred from the time Jane Doe 1 was in kindergarten until she was in fifth grade. See PSR ¶ 44, at 9. Moreover, the conduct to which Begay pled guilty regarding Jane Doe 2 involves Begay touching Jane Doe 2's buttocks and panty line while she was sleeping, and Begay's conduct regarding Jane Doe 1

involves Begay penetrating Jane Doe 1's vagina with both his fingers and his penis on several occasions.  See PSR ¶ 13, at 5; PSR ¶ 44, at 9.  Begay's conduct with regard to Jane Doe 1 and Jane Doe 2 is thus "the same type of conduct," because it involves sexual contact with minors, both to whom Begay is related, and was done for the purpose of Begay's sexual gratification. Consequently, the Court properly may consider Begay's sexual abuse of Jane Doe 1 as relevant conduct.

Second, while Begay argues that the PSR's inclusion of conduct regarding Jane Doe 1 is improper, because it explicitly was excluded from the written plea agreement, the Court may consider "uncharged and even acquitted conduct."  United States v. Allen, 488 F.3d at 1254-55. Thus, the Court takes no issue with considering conduct with which Begay was charged, but to which he did not plead guilty.  Moreover, the Court concludes that the United States proves Begay's sexual abuse of Jane Doe 1 by a preponderance of the evidence based on the evidence set forth in the PSR, including both Jane Doe 1's statements and Begay's admissions.  See PSR ¶¶ 44-46, at 9-10.

Because the Court properly may consider Begay's sexual abuse of Jane Doe 1 as relevant conduct, and the United States proves the facts involving Begay's sexual abuse of Jane Doe 1 by a preponderance of the evidence, the Court also concludes that Begay's sexual abuse of Jane Doe 1 justifies the 5-level sentencing enhancement pursuant to U.S.S.G. § 4B1.5(b)(1).  Section 4B1.5(b)(1) provides that a 5-level sentencing enhancement should apply when "the defendant engaged in a pattern of activity involving prohibited sexual conduct."  U.S.S.G. § 4B1.5(b)(1).  In United States v. Riccardi, 405 F.3d 852 (10th Cir. 2005), the Tenth Circuit upheld the application of a 5-level enhancement pursuant to § 4B1.5(b)(1) where "the jury found that Mr. Riccardi engaged in prohibited sexual conduct on at least two occasions with at least two minors."  United

States v. Riccardi, 405 F.3d at 873 n.6.   Here, Begay engaged in prohibited sexual conduct with both Jane Doe 1 and Jane Doe 2, and both victims were minors at the time of the prohibited sexual conduct.  Consequently, the Court concludes that the 5-level sentencing enhancement's application is proper, and thus, overrules Begay's objection.

**IT IS ORDERED** that the Objections: (i) in the Sentencing Memorandum for Defendant Lyle Woody Begay and Formal Objection to Presentence Investigation Report, filed July 1, 2021 (Doc. 274)("Sentencing Objection"); and (ii) in the Correction to Sentencing Memorandum for Defendant Begay and Formal Objections to the Presentence Investigation Report, filed July 9, 2021 (Doc. 275)("Correction to Sentencing Objection"), are overruled.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Fred J. Federici
   Acting United States Attorney
Kyle T. Nayback
Novaline D. Wilson
   Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Alexandra W. Jones
Jones Law Firm, LLC
Albuquerque, New Mexico

 -- and --

Samuel L. Winder
Romero & Winder, P.C.
Albuquerque, New Mexico

*Attorneys for the Defendant*